IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :                    CRIMINAL ACTION
                                  :
                                  :
            v.                    :
                                  :
                                  :
MARQUIS WILSON                    :                    NO. 14-cr-209-1 & -2
MALCOM MOORE                      :
                                  :

**OPINION**

Legrome D. Davis, J.                                    October 27, 2016

## I.      Introduction

On April 24, 2014, a grand jury returned an indictment against Marquis Wilson

and Malcom Moore alleging one count of conspiracy to commit armed bank robbery, two

counts of armed bank robbery, and two counts of using a firearm in furtherance of a

crime of violence. Indictment (Doc. No. 27). The charges arise out of two armed

robberies of Wells Fargo bank branches in November 2013. *Id.* During the course of

investigating these robberies, both state and federal law enforcement separately obtained

cell site location information for Wilson's cellular phone. Gov't Omnibus Resp. (Doc.

No. 165), at 3. The defendants were arrested on state warrants in January 2014, and the

case was subsequently adopted by federal authorities. Gov't Omnibus Resp., at 5.

After the defendants' initial appearance in May 2014, Min. Entries (Doc. Nos. 41

and 43), both defendants requested continuances in order to prepare for trial, as well as to

negotiate with the government about a possible plea agreement. Moore's Mot. to

Continue Trial (Doc No. 57); Wilson's Mot. to Continue Trial (Doc. No. 72). These negotiations eventually proved successful; the government and the defendants agreed to plea agreements under Federal Rule of Criminal Procedure 11(c)(1)(C) in which the government would dismiss one of the firearms charges—reducing the applicable mandatory minimum by twenty-five years—and Wilson and Moore would be sentenced to seventeen and fifteen years, respectively. Moore and Wilson's Plea Agreements (Doc. Nos. 86 and 89). A change of plea hearing was held in April 2015, and the Court accepted both defendants' guilty pleas. Min. Entry (Doc. No. 88). Unbeknownst to the Court, the agreement between the government and the defendants was a package plea agreement—both defendants had to plead guilty for the offer to be valid. Gov't's Omnibus Resp., at 20.

Two months after the entry of the guilty pleas, Wilson filed a pro se motion to withdraw his plea agreement and to replace his counsel. Wilson's Pro Se Mot. to Withdraw Guilty Plea and Removal of Counsel (Doc. No. 95). The Court granted Wilson's request to replace counsel and appointed new counsel. July 29, 2015, Order (Doc. No. 99). New counsel then raised the failure of the government to disclose the package plea agreement, and the Court issued a briefing schedule to allow all parties to litigate the issue. *See* Sept. 18, 2015, Order (Doc. No. 102). But before briefing could be completed, Moore requested new counsel, and then Wilson requested new counsel for the second time. Orders Replacing Counsel (Doc. Nos. 109 and 110). After new counsel was appointed for both defendants, Moore also sought to withdraw his guilty plea. Moore's Pro Se Mot. to Withdraw Guilty Plea (Doc. No. 119). The Court allowed both defendants

to withdraw their pleas in April 2015. Orders Granting Mots. To Withdraw Pleas (Doc. Nos. 134 and 135).

After the pleas were withdrawn, the newly appointed defense lawyers requested a delay to prepare for trial, and so trial was set for—and in fact commenced on—September 26, 2016. Notice of Hearing (Doc Nos. 139 and 140); Min. Entry (Doc. No. 184). In July 2016, the defendants filed a number of pretrial motions, and the Court permitted the defendants to join in each other's motions. The defendants' pretrial motions included a motion to suppress evidence obtained from a car stop (Doc. Nos. 143 and 160), a motion to dismiss the indictment (Doc. No. 142), a motion to dismiss Counts Three and Five of the Indictment (Doc. No. 159), a motion to sever the defendants (Doc. No. 149), and a motion to suppress cell site location information (Doc. No. 161). The Court denied these motions in a September 20, 2016, Order (Doc. No. 182). Findings of Fact and Conclusions of Law for the car stop motion have been issued separately. This opinion sets forth the reasons for the Court's denial of the remaining motions (Doc. Nos. 142, 149, 159, and 161).

## II.    Dismissal of Indictment

Moore, joined by Wilson, moved to dismiss the indictment. Def. Moore's Am. Mot. to Dismiss Indictment ("Am. Mot. to Dismiss Indictment") (Doc. No. 142). The defendants argue the indictment should be dismissed because (a) the package plea agreement was coercive and violated their rights under the Due Process Clause and *United States v. Hodge*, 412 F.3d 479, 491 (3d Cir. 2005); (b) the government committed prosecutorial misconduct that interfered with the defendants' relationships with their

attorneys, in violation of their Fifth and Sixth Amendment rights; and (c) their right to a speedy trial under both the Sixth Amendment and the Speedy Trial Act was violated. On September 20, 2016, this Court denied the motion.

A.      *Package Plea Agreement*

Dismissal of the indictment is not warranted as a result of the package plea agreement. The defense did not present any credible evidence of specific incidents of coercion. Nor does the fact that the defendants' plea agreements were linked together in a package plea agreement establish coercion, as package plea agreements are not inherently coercive and do not violate Due Process. The only valid issue raised by the defendants with regard to the plea is the parties' failure to inform the Court that the plea agreements in this case were linked, in violation of *United States v. Hodge*. But the defendants have already received the remedy they were due for that violation—the withdrawal of their guilty pleas. No further remedy is justified.

Due process requires that a guilty plea be "knowing, voluntary and intelligent." *United States v. Tidwell*, 521 F.3d 236, 251 (3d Cir. 2008). When challenging a plea, the defendant bears the burden of establishing that one of these factors is missing. *See United States v. Stewart*, 977 F.2d 81, 85 (3d Cir. 1992). In addition to these constitutional requirements, a guilty plea must also be entered in accordance with Rule 11 of the Federal Rules of Criminal Procedure, which lays out a specific procedure to assist the judge in determining if a plea is voluntary. *McCarthy v. United States*, 394 U.S. 459, 465 (1969). If a plea is accepted in violation of Rule 11, the appropriate remedy is to provide the defendant with an opportunity to plead anew. *Id.* at 472.

Package plea agreements—where the government's plea offer is contingent on multiple defendants accepting the offer—do not violate a defendant's constitutional rights. *United States v. Hodge*, 412 F.3d 479, 490 (3d Cir. 2005). However, there are additional procedural requirements for package pleas during the Rule 11 colloquy: the parties must inform the Court that the plea is a package plea, and the Court must take "special care . . . to ensure that the defendant is pleading voluntarily." *Id.* at 491. Like the other requirements of Rule 11, these procedures are not constitutionally mandated, but rather are "designed to assist the district judge" in determining voluntariness. *McCarthy*, 394 U.S. at 465; *see also United States v. Wilson*, 429 F.3d 455, 460 n.4 (3d Cir. 2005) (explaining that the procedure for package pleas laid out in *Hodge* is not a constitutional rule).

The defense argues that linking the two defendants' plea agreements coerced them into pleading guilty. The defendants' motion does not, however, point to any coercion beyond the linked nature of the package plea itself. Am. Mot. to Dismiss Indictment. Package plea agreements "are *not* inherently coercive," and "[t]here is no question" of their constitutionality. *Hodge*, 412 F.3d at 490–92. (emphasis added). Although the Court was not informed of the package plea agreement, both defendants were aware that the pleas were linked. Am. Mot. to Dismiss Indictment, at 4. The Court inquired of both defendants at the change of plea hearing as to whether "anyone promised you, threatened you, or did anything to you to cause you to [plead guilty] against your wishes." Apr. 9, 2015, Tr. of Guilty Plea, at 29–30 (Doc. No. 104). Both defendants testified under oath that there had not been any such coercion. *Id.* at 30.

The defense also argues that the government's failure to inform the Court that the guilty plea was a package plea agreement violated the Due Process rights of the defendants. Am. Mot. to Dismiss Indictment, at 5. It is true that the failure of either party to disclose the linked nature of the plea may have resulted in an inadequate Rule 11 plea colloquy. *See Hodge*, 412 F.3d at 491. But the requirement of disclosure is not a constitutional one, thus the failure to disclose the packaged nature of the plea did not violate the Due Process Clause. *See Wilson*, 429 F.3d at 460 n.4. The remedy for an inadequate colloquy is to allow the defendants to withdraw their pleas. *McCarthy*, 394 U.S. at 472. This is the remedy the defendants requested when they initially raised the issue with the Court. *See* Def. Moore's Mot. to Withdraw Guilty Plea (Doc. No. 119); Def. Wilson's Am. Mot. to Withdraw Guilty Plea (Doc. No. 113). And this is the remedy the defendants received when the Court granted both of their motions to withdraw their pleas. Apr. 11, 2016, Orders Granting Mots. to Withdraw Pleas (Doc. Nos. 134 and 135). The defendants have made no showing that the failure to disclose the package plea to the Court should result in any additional remedy.

> B.       *Attorney-Client Relationship*

The defendants also claim that dismissal of the indictment is warranted because the government violated their Fifth and Sixth Amendment rights by interfering with their relationship with counsel. Yet dismissal is not proper on this ground either, because the defendants have not demonstrated government misconduct or interference with their attorney-client relationships.

"[O]utrageous misconduct" by the government "that deliberately interferes with the attorney-client relationship" violates the Fifth Amendment. *United States v.*

*Hoffecker*, 530 F.3d 137, 154 (3d Cir. 2008). However, dismissal is an "extreme sanction which should be infrequently utilized." *United States v. Scott*, 223 F.3d 208, 211 (3d Cir. 2000). The defense bears the burden of establishing outrageous misconduct justifying such a sanction. *See Hoffecker*, 530 F.3d at 154.

A defendant's Sixth Amendment rights are breached if defense counsel's representation is "corrupted by conflicting interest," denying the defendant the "undivided loyalty" of counsel. *Hess v. Mazurkiewicz*, 135 F.3d 905, 910 (3d Cir. 1998) (internal citations omitted). A defense attorney who "effectively joins the state in an effort to attain a conviction" has disregarded that duty of loyalty and violated the defendant's Sixth Amendment rights. *Osborn v. Shillinger*, 861 F.2d 612, 629 (10th Cir. 1988). The burden of showing a conflict of interest lies with the defense. *See Hess*, 135 F.3d at 910.

The defense points to several different instances of purported misconduct: (1) the package plea agreement, (2) the failure to disclose the nature of the agreement to the Court, (3) the imposition of a separation order between the defendants, and (4) defense counsels' efforts to get the defendants to plead guilty. None of these allegations are sufficient to establish misconduct by the government or defense counsel. Offering a package plea agreement to the defendants was not misconduct, as such plea agreements are legally permissible. *See Hodge*, 412 F.3d at 490. The government did fail to disclose the linked nature of the agreements, but that failure was inadvertent rather than malicious. And it was remedied through the withdrawal of the pleas. The separation order could not have interfered with the attorney-client relationship because it did not prevent the defendants from communicating with their attorneys. The government also lifted the

separation order upon defense counsels' request to permit a joint meeting of the defendants and their lawyers prior to the change of plea hearing. *See* Gov't's Omnibus Resp. (Doc. No. 165), at 25.

Finally, the defendants also allege that their own attorneys committed misconduct when the lawyers met with both defendants in March 2014. There is nothing improper about an attorney encouraging a client to plead guilty based on his professional evaluation of the case; in fact, "[a] defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable." *Boyd v. Waymart*, 579 F.3d 330, 353 (3d Cir. 2009) (quoting Model Code of Prof'l Responsibility EC 7-7 (Am. Bar Ass'n 1992)). The defendants claim that their attorneys did not merely provide advice but instead engaged in intimidation and coercion. Sept. 14, 2016, Tr. of Mots. Hearing, at 82–83, 124. This allegation is contradicted by the testimony of both defense attorneys. *Id.*, at 43–44, 71–72. It is also contradicted by the defendants' own previous sworn testimony that they were not coerced into pleading guilty. *See* Apr. 9, 2015, Tr. of Guilty Plea, at 29–30. Thus the defense has failed to establish that either the government or their prior counsel engaged in any misconduct with regard to the guilty plea. And even if they had, any prejudice from the plea was cured when the Court permitted the defendants to withdraw their pleas. Apr. 11, 2016, Orders Granting Mots. to Withdraw Pleas.

C.    *Speedy Trial Rights*

Although the defendants withdrew their guilty pleas, the defense argues that their trial was delayed as a result of the pleas and subsequent withdrawals, violating their right to a speedy trial. Defendants' motion does not clearly address whether the speedy trial

claim is based on their Sixth Amendment rights, or their statutory rights under the Speedy Trial Act, 18 U.S.C. § 3161. *See* Am. Mot. to Dismiss Indictment, at 5–7. Different standards apply in resolving constitutional and statutory speedy trial claims; although the Speedy Trial Act was designed to "give effect to the Sixth Amendment right to a speedy trial," *United States v. Rivera Const. Co.*, 863 F.2d 293, 295 (3d Cir. 1988) (internal quotation marks omitted), "[t]he constitutional right to a speedy trial is both narrower and broader than the corresponding statutory right," *United States v. Gearhart*, 576 F.3d 459, 462 (7th Cir. 2009). As a result, this Court will address both speedy trial rights separately. In both cases, the claims fail. The delays in this case are virtually all attributable to the defendants and did not result in any prejudice to them. The delays were also excludable under the provisions of the Speedy Trial Act.

### 1.      *Sixth Amendment Right to a Speedy Trial*

There is no set amount of time at which the Sixth Amendment right to a speedy trial has been violated; instead, the time period varies with the facts and circumstances of each individual case. *Barker v. Wingo*, 407 U.S. 514, 521–22 (1972). The Supreme Court has laid out four factors for determining if a particular delay has violated the speedy trial right: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530.

### a.      *Length of Delay*

The first factor, length of the delay, is calculated from the earlier of the defendant's arrest or indictment. *United States v. Velazquez*, 749 F.3d 161, 183 (3d Cir. 2014). If the delay is short enough—less than approximately one year—then the court can rely on that factor alone and need not consider the other factors. *See Doggett v.*

*United States*, 505 U.S. 647, 651–52 (1992). Once the delay passes that threshold, analysis of the other factors is triggered, with the length of the delay "also separately weighed in the court's analysis of the remaining factors." *Velazquez*, 749 F.3d at174.

Wilson and Moore were both arrested on January 27, 2014, Gov't's Omnibus Resp., at 5, and were both tried beginning two years and eight months later, on September 26, 2016, Min. Entry (Doc. No. 184). However, following their arrest, the defendants were held in Montgomery County, Pennsylvania, on state charges until their indictment in federal court on April 24, 2014. Gov't's Omnibus Resp., at 5; Indictment (Doc. No. 27). "[A]rrest on state charges does not engage the speedy trial protection for a subsequent federal charge;" instead, the right to a speedy trial begins upon the subsequent federal indictment. *United States v. Battis*, 589 F.3d 673, 679 (3d Cir. 2009) (quoting *United States v. Garner*, 32 F.3d 1305, 1309 (8th Cir.1994)). Thus, the relevant timeframe here is two years and five months.[1] A delay of this length can be permissible depending on the circumstances of the case. *See, e.g.*, *Conroy v. Leone*, 316 F. App'x 140, 144 (3d Cir. 2009) (four-year delay did not violate speedy trial right because defendant delayed in asserting his right, there were legitimate reasons for delay, and there was no showing of prejudice). However, the time span at issue makes review of the remaining factors appropriate, and the length counts in the defendants' favor when balancing the factors.

       b.       *Reason for the Delay*

The second factor, the reason for the delay, looks at the diligence with which the government has pursued the case. *Id.* at 175. A speedy trial claim will fail if the

---

[1] In light of the analysis of the *Barker* factors below, this Court's conclusion would not be altered even if the three months in state custody were included.

government has been "reasonab[ly] diligent," whereas relief is "virtually automatic" if the government has acted in bad faith. *Id.* (quoting *Doggett*, 505 U.S. at 656–57). On the other hand, delay attributable to the defendant—including through the actions of defense counsel—may waive the speedy trial claim. *See Vermont v. Brillon*, 556 U.S. 81, 90 (2009).

The cause of the delay weighs squarely in the government's favor, as most of the delay is directly attributable to the defendants. A trial date for both defendants was initially set for three months after their indictment, on July 28, 2014. Notice of Hearing (Doc. Nos. 54 and 55). Counsel for both defendants then requested continuances, on June 12 and July 21, 2014, respectively, so that they could prepare for trial and explore non-trial dispositions. *See* Moore's Mot. to Continue Trial (Doc. No. 57); Wilson's Mot. to Continue Trial (Doc. No. 72). These efforts led to the successful negotiation of plea agreements with the government, which Moore signed on January 28, 2015, and Wilson signed on March 31, 2015. Moore's Guilty Plea Agreement (Doc. No. 89); Wilson's Guilty Plea Agreement (Doc. No. 86). A change of plea hearing was held about a week later. Min. Entry (Doc. No. 88).

Two months later, on June 22, 2015, Wilson filed a pro se motion to withdraw his plea agreement, which was later supplemented with briefing by counsel. *See* Pro Se Mot. to Withdraw Guilty Plea, and Removal of Counsel (Doc. No. 95); Am. Mot. to Withdraw Guilty Plea (Doc. No. 113). This issue was litigated by all parties—including Moore, who also sought to withdraw his guilty plea, Pro Se Mot. to Withdraw Guilty Plea (Doc. No. 119)—and the Court granted the defendants' motions to withdraw their pleas on April 11, 2016. Orders that Defs.' Mots. to Withdraw Guilty Pleas are Granted (Doc.

Nos. 134 and 135). At the defense's request, the Court also granted a continuance to prepare for trial, which then commenced on September 26, 2016. *See* Report of Speedy Trial Delay (Doc. No. 136); Min. Entry (Doc. No. 184).

The delays in these proceedings are virtually all attributable to the defendants. The government never requested any continuances, with the sole exception of a joint request with Wilson for additional time to brief the *Hodge* issue. *See* Order Granting Extension of Time (Doc. No. 106). The defendants requested multiple continuances and further delayed matters by repeatedly seeking the removal and replacement of counsel. Delays resulting from the repeated replacement of counsel are the fault of the defendants, not the government. *See Brillon*, 556 U.S. at 94.

Nor can the delay resulting from the withdrawal of the plea is be attributed to the government. The time a trial is delayed due to the entry and subsequent withdrawal of a guilty plea is not chargeable to the government and does not result in a speedy trial violation. *See United States v. Ewell*, 383 U.S. 116, 120 (1966) (permitting retrial despite delay resulting from guilty plea being set aside because of defective indictment); *United States v. Doria*, 891 F.2d 296 (9th Cir. 1989) (holding that the government was not responsible for delay from withdrawal of guilty plea); *United States v. Herman*, 576 F.2d 1139, 1145 (5th Cir. 1978) (holding that defendant was responsible for the delay from the withdrawal of his guilty plea). The defense argues much of the delay was caused by the *Hodge* violation, and that violation—and thus the delay—is attributable to the government. Am. Mot. to Dismiss Indictment, at 7. But *Hodge* places the burden of disclosing package plea agreements on *both* the defense and the prosecution, making any delay from a failure to disclose equally attributable to the defense. *See Hodge*, 412 F.3d

at 491 n.14. Even if the failure to disclose were solely the government's fault, much of the resulting delay would still be attributable to the defendants. The *Hodge* issue was first raised in September 2015, and the Court set a briefing schedule in which all briefs were to have been filed by November 2015. Sept. 22, 2015, Order (Doc No. 103). But before the issue could be resolved, both defendants sought to have their attorneys replaced, forcing the Court to stay the briefing schedule. *See* Oct. 29, 2015, Order (Doc. No. 109). The defendants were responsible for delaying the resolution of the *Hodge* issue, just as they were responsible for most of the other delays in the case. Therefore, the cause of the delay weighs against the defendants.

c.      *Assertion of the Speedy Trial Right*

The third factor, the defendant's assertion of the right, will weigh in a defendant's favor if he "vigorously pursued a speedy trial." *Hakeem v. Beyer*, 990 F.2d 750, 764 (3d Cir. 1993) (quoting *United States v. Koller*, 956 F.2d 1408, 1414 (7th Cir. 1992)). However, failure to demand a speedy trial does not waive the right. *Barker*, 407 U.S. at 528.

Here, this factor is neutral. The defendants did invoke their right to a speedy trial in a pair of pro se motions filed in March 2016, *see* Defs.' Pro Se Mots. to Dismiss Indictment (Doc. Nos. 126 and 127), and in a motion to dismiss the indictment filed by Moore in July 2016, which was subsequently joined by Wilson, *see* Am. Mot. to Dismiss Indictment (Doc. No. 142). However, the initial assertion came less than a month after Moore had delayed the proceedings by requesting the replacement of counsel. And defense counsel requested a continuance only a few weeks later. Asserting the right to a speedy trial does not balance the third factor in the defendants' favor when their "other

13

actions indicate that [they are] unwilling or unready to go to trial." *Hakeem*, 990 F.2d at 764. The factor should not count against the defendants—as they did assert their rights—but it does not count in their favor either.

### d.      Prejudice

The fourth and final factor is the prejudice to the defendant. *Barker*, 407 at 532. Three types of prejudice can result from delaying trial: (1) "oppressive pretrial incarceration," (2) "anxiety and concern" suffered by the accused, and (3) impairment of the accused's defense. *Id.* The possibility of prejudice is not enough; the defendant must establish that the delay actually caused him prejudice. *See Hakeem*, 990 F.2d at 760. Of the three types of prejudice, impairment of the accused's defense is the most serious. *See Barker*, 407 U.S. at 528. Credit for time served can mitigate the prejudice from pretrial incarceration, and some level of anxiety is unavoidable in every criminal case. *See Hakeem*, 990 F.2d at 762. Prejudice that affects the defendant's ability to defend himself, though, "skews the fairness of the entire system." *Barker*, 407 U.S. at 532. Even if the defendant is unable meet their burden, prejudice can be presumed if a sufficiently long delay is attributable to the government. *See Doggett v. United States*, 505 U.S. 647, 658 (1992). In that case, the burden to rebut is shifted to the government. *Id.* The exact time period needed to presume prejudice has not been settled; the Third Circuit has held that a delay of thirty-five months is sufficient to presume prejudice, but a delay of fourteen months is not. *See Battis*, 589 F.3d at 683; *Hakeem*, 990 F.2d at 764.

The defendants have not established that the delay prejudiced them. The only assertion of prejudice is a claim that the delay gave the prosecution "the upper hand." Am. Mot. to Dismiss Indictment, at 7. The defense made no actual showing of prejudice

14

whatsoever. There is no evidence that the conditions of their pretrial incarceration are oppressive or substandard—and the defendants will receive credit for all of the time they served pretrial. *See Hakeem*, 990 F.2d at 762. The defendants have also failed to show that they suffered any kind of "psychic injury" because of the delay. *See id.* They also failed to show, or even assert, that the delay impaired their defense in anyway. And because the delay was not attributable to the government, prejudice cannot be presumed—the burden of establishing prejudice stays with the defense. The lack of evidence makes it clear the defense has failed to meet that burden.

\*      \*      \*

The balance of all four factors is against the defendants. More than two years is a significant amount of time to await trial. But the cause of that delay is largely attributable to the defendants, and there is no evidence that the delay caused any prejudice. Therefore, dismissal on Sixth Amendment speedy trial grounds is not warranted.

### 2.     *Speedy Trial Act*

The defendants also allege a violation of their separate, statutory right to a speedy trial under the Speedy Trial Act, 18 U.S.C. § 3161. The Speedy Trial Act mandates that a criminal trial must commence within seventy days of the later of the filing of an indictment or a defendant's initial appearance.[2] *Id.* § 3161(c)(1). If a defendant pleads guilty and later withdraws that plea, the date of indictment shall be considered the date on which "the order permitting withdrawal of the plea [became] final." *Id*. § 3161(i).

---

[2] The point at which the calculation of time begins is thus different under the Speedy Trial Act than it is under the Sixth Amendment. *Compare Battis*, 589 F.3d at 678 ("In general, [Sixth Amendment] delay is measured from the date of arrest or indictment, whichever is earlier."), *with* 18 U.S.C. § 3161(c)(1) ("[T]he trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.")

Although the Act requires that trial commence within seventy days, it also provides for a number of situations in which delays can be excluded from this seventy-day period. *Id.* § 3161(h). In cases involving the joinder of multiple defendants, an exclusion that applies to one defendant is applicable to all codefendants, so long as it is reasonable. *See id.* § 3161(h)(6); *United States v. Felton*, 811 F.2d 190, 199 (3d Cir. 1987).

One period of time that is excludable under the Act is any delay from a defendant's continuance request when "the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Such a continuance is appropriate in a number of circumstances, including when time is needed to prepare pretrial motions, to negotiate a plea agreement, or to ensure continuity of counsel. *United States v. Fields*, 39 F.3d 439, 444–45 (3d Cir. 1994). The continuance can be open-ended, rather than for a specific period of time, but it must be must be granted prior to the days being excluded. *See United States v. Lattany*, 982 F.2d 866, 881 (3d Cir. 1992); *United States v. Brenna*, 878 F.2d 117, 122 (3d Cir. 1989). The court must also state its reasons for granting the continuance, though that statement can be made sometime after the order is issued. *See Brenna*, 878 F.2d at 122. A defendant's speedy trial claim can be rejected when the delay was caused by a continuance requested by the defendant, because defendants should not be permitted to "abuse the system by requesting . . . continuances and then argu[ing] that their convictions should be vacated because the continuances they acquiesced in were granted." *Fields*, 39 F.3d at 443 (quoting *Lattany*, 982 F.2d at 883).

The prosecution of Wilson and Moore did not violate the Speedy Trial Act. Because the withdrawal of a guilty plea resets the speedy trial clock, there are two

16

separate periods of time to analyze here: the time between the defendants' initial appearance and their guilty plea, and the time between the withdrawal of the guilty pleas and the commencement of trial. In both time periods, the speedy trial clock was stopped by continuances specifically permitted under the Act. In addition, all of those continuances were requested by the defendants. Thus, dismissal under the Speedy Trial Act is not justified.

a.     *Time between Initial Appearance and Pleas*

The time that elapsed between the defendants' initial appearances and their guilty plea did not violate the Speedy Trial Act because all but seventeen days of it was excluded by an ends of justice continuance. The speedy trial clock for both Wilson and Moore started on May 22, 2014, when they made their initial appearances. Min. Entries (Doc. Nos. 41 and 43). The period was tolled for three days when the government made a detention motion on May 27, 2014, Mot. for Pretrial Detention (Doc. No. 44), which was resolved on May 29, 2014, Min. Entry (Doc. No. 45). The period was tolled again on June 12, 2014, when Moore filed a motion to continue the case, Moore's Mot. to Continue Trial (Doc. No. 57), which the Court granted on June 17, 2014, Order Continuing Case (Doc. No. 58). Wilson similarly filed a motion for a continuance on July 21, 2014, Wilson's Mot. to Continue Trial (Doc No. 72), which was granted on July 22, 2014, Order Continuing Case (Doc. No. 73). Although it came a month before Wilson's motion, the filing of Moore's motion tolled the speedy trial period for both defendants because their cases were joined. *See Felton*, 811 F.2d at 199. After excluding the time while the motion for pretrial detention was pending, only seventeen includable days had elapsed when Moore's continuance motion was filed.

As the defendants pointed out in their continuance requests, a continuance was necessary to "review discovery and prepare a defense," as well as to attempt to "negotiate a non-trial resolution of this matter." Moore's Mot. to Continue Trial, at 2–3. This case involved voluminous evidence—multiple eyewitnesses, multiple cooperating witnesses, surveillance videos, and witnesses and events that occurred out of state. Extra time was needed to review this material and prepare for trial. Time was also needed to discuss a possible plea with the government, especially since a plea agreement could have made it possible for the defendants to avoid the thirty-two-year mandatory minimum prison sentence in this case. As a result of these considerations, the Court granted an open-ended continuance excludable from the speedy trial period. An open-ended delay was reasonable because it was in the best interest of the defendants for their counsel to have sufficient time to either negotiate a plea agreement, or to carefully review the discovery and prepare a defense, and neither the Court nor the parties could predict exactly how long that would take.

The defendants argue that these continuances were inappropriate because they were requested by their former counsel under 18 U.S.C. § 3161(h)(8), the provision of the Speedy Trial Act dealing with delays resulting from acquiring evidence in a foreign country. *See* Am. Mot. to Dismiss Indictment, at 8. Prior to 2008, Section 3161(h)(8) was the provision for ends of justice continuances; Congress amended the code in October 2008, and moved that provision to Section 3161(h)(7). Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406, § 13, 122 Stat. 4291, 4294. At the motions hearing, both of the prior attorneys that filed the motion testified that their use of the old section number was an oversight, likely the result of not updating a

computer form. Sept. 14, 2016, Tr. of Mots. Hearing, at 38–39, 70. Although prior counsels' motions cited the wrong provision of the Speedy Trial Act, it is clear from the text of the motions that the continuances were requested on ends of justice grounds permitted by the Speedy Trial Act, and the Court granted the motions on those grounds. Prior counsel's citation to the old section numbers does not affect this analysis. *See United States v. Burrell*, 634 F.3d 284, 288 n.2 (5th Cir. 2011) (applying new section numbers to its analysis of a Speedy Trial Act continuance motion because citation to old section number was unintentional); *United States v. Coleman*, No. 10-cv-2013, 2012 WL 1231800, at *1 n.4 (E.D. Pa. Apr. 12, 2012) (assuming that the government meant to refer to a different Speedy Trial Act section because Congress had renumbered the sections). Thus there was no Speedy Trial Act violation between the initial appearance and the entry of the guilty plea.

> b.    *Time between Withdrawal of Pleas and Trial*

The time period between the defendants' withdrawal of their guilty pleas and their trial also complied with the Speedy Trial Act. The Court granted the defendants' motions to withdraw their guilty pleas on April 11, 2016, Orders Granting Mots. to Withdraw Guilty Pleas (Doc. Nos. 134 and 135), starting a new seventy-day period under the Speedy Trial Act. Prior to the withdrawal, the Court proposed a June 6, 2016, trial date, which would have been only fifty-six days into the speedy trial period. Government counsel was available on that date, but defense counsel requested a continuance because they needed more time to effectively prepare for trial and they had scheduling conflicts. This Court found that the ends of justice required a continuance and granted defense counsel's request. Report of Speedy Trial Act Delay (Doc. No. 136). Trial was set for

September 26, 2016, and did indeed commence on that date. Scheduling Order (Doc. No. 137).

This continuance did not violate the Speedy Trial Act because it was in the best interest of both defendants and outweighed the interest in a speedy trial. At the time, Wilson and Moore had both recently replaced their lawyers, so additional time was needed to review the substantial amount of evidence and prepare a defense. The repeated changes in counsel also made it important to accommodate defense counsels' scheduling conflicts in order to maintain continuity of counsel and prevent further delays. Thus the period between the Court's granting of the continuance request and the commencement of trial is excludable under the Speedy Trial Act. Dismissal for violating the Act is not warranted.

### III.     Dismissal of Counts Three and Five

Wilson, joined by Moore, moved to dismiss Counts Three and Five of the indictment, arguing that armed bank robbery is not a crime of violence under 18 U.S.C. 924(c)(3). Def. Wilson's Mot. to Dismiss Counts 3 & 5 (Doc. No. 159). The Court denied the motion on September 20, 2016. Dismissal of Counts Three and Five is not justified because armed bank robbery is a crime of violence under the elements clause of 18 U.S.C. 924(c)(3). As a result, the indictment alleges sufficient facts to charge a violation of that statute.

An indictment's factual allegations must be sufficient to charge an offense. *United States v. Schiff*, 602 F.3d 152, 161 (3d Cir. 2010). If the facts alleged "'fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation,' the indictment fails to state an offense." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir.

2012) (quoting *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002), *abrogated on other grounds by Skilling v. United States*, 561 U.S. 358, 408–409 (2010)).

Here, Counts Three and Five of the indictment charge the defendants with carrying, using, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Indictment (Doc. No. 27), at 9, 11. Section 924(c) provides enhanced penalties when a firearm is possessed, brandished, or discharged in furtherance of a "crime of violence." For a predicate offense to be a "crime of violence," it must be a felony and it must meet one of two possible definitions:

> (A) [an offense that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). The first test is referred to as the elements clause, and the second test is known as the residual clause. A crime is a crime of violence if it satisfies either the elements clause *or* the residual clause. *See id*. The defendants argue that armed bank robbery does not meet requirements of the elements clause and that the residual clause is unconstitutionally vague. This Court finds that armed bank robbery is a crime of violence under the elements clause. As a result, there is no need to reach the constitutionality of Section 924(c)(3)(B)'s residual clause. *See Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.").

The determination of whether a predicate offense is a crime of violence under the elements clause is not made on the facts of the specific allegations against a defendant, but is instead made categorically based on the elements of the offense. *See Aguilar v. Att'y Gen. of the United States*, 663 F.3d 692, 695 (3d Cir. 2011) (holding that the categorical approach applies to the identical definition of "crime of violence" in 18 U.S.C. § 16); *United States v. Butler*, 496 F. App'x 158, 161 (3d Cir. 2012) (holding that the categorical approach applies to § 924(c)). Therefore, the Court must look at the statutory elements of the offense and "ascertain the least culpable conduct necessary to sustain conviction under the statute." *Aguilar*, 663 F.3d at 695 (quoting *Denis v. Att'y Gen. of the United States*, 633 F.3d 201, 206 (3d Cir. 2011)).

Here, defendants were charged with the predicate offense of armed bank robbery in violation of 18 U.S.C. § 2113(d). Section 2113 makes it illegal to take anything of value from a bank "by force and violence, or by intimidation. 18 U.S.C. 2113(a). This requires "proof of force or threat of force." *United States v. Askari*, 140 F.3d 536, 541 (3d Cir.), *vacated on other grounds,* 159 F.3d 774 (3d Cir. 1998). If the taking is by intimidation, the question is whether "an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts." *Id.* (quoting *United States v. Woodrup*, 86 F.3d 359, 363 (4th Cir. 1996)). A defendant commits armed bank robbery if during a bank robbery under Section 2213(a), he "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device." 18 U.S.C. § 2113(d). A dangerous weapon or device is "any object that can be used by one person to inflict severe bodily harm or injury upon another person." *United States v. Beckett*, 208 F.3d 140, 152 (3d Cir. 2000).

Armed bank robbery is a crime of violence under the elements clause of Section 924(c)(3). First, the element of armed bank robbery that requires a taking "by force and violence, or by intimidation" necessitates the use, attempted use, or threatened use of force. 18 U.S.C. 2113(a). Defendants argue that a taking by intimidation is not a crime of violence because intimidation is judged objectively, meaning the defendants need not have the specific intent to intimidate. *See* Mot. to Dismiss Counts 3 & 5, at 8–9. Although bank robbery does not require the specific intent to intimidate, it does require general intent—a defendant must know that he is taking a bank's property by force and violence or intimidation. *Carter v. United States*, 530 U.S. 255, 268 (2000). A "knowing *or* intentional application of force is a "use" of force." *United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014) (emphasis added). Because bank robbery requires either the knowing use of "force and violence" or a knowing threat of force, it is a crime of violence under the elements clause of Section 924(c). *See United States v. McNeal*, 818 F.3d 141, 155 (4th Cir. 2016) (holding that bank robbery is a crime of violence because a defendant's knowledge that his behavior is intimidating satisfies 924(c)'s mens rea requirement).

Second, the additional element of armed bank robbery—that a defendant assaults someone or puts their life in jeopardy through the use of a dangerous weapon or device—requires the "use, attempted use, or threatened use of physical force." 18 U.S.C. 924(c)(3)(A). To be guilty of armed bank robbery, a defendant must use a device that can "inflict severe bodily harm or injury upon another person," *Beckett*, 208 F.3d at 152, and inflicting bodily harm or injury "necessarily involves the use of physical force," *see Castleman*, 134 S. Ct. at 1414. Even the "indirect application" of force to cause harm is

sufficient. *Id.* Thus the examples proposed by the defendants as means of assaulting or putting someone's life in jeopardy through the use of a dangerous weapon or device without using physical force—such as by poisoning them, *see* Mot. to Dismiss Counts 3 & 5, at 11–12—are unavailing. The Supreme Court squarely rejected that argument in *Castleman*, holding that indirect causes of harm, including "administering a poison," do constitute use of physical force. 134 S. Ct. at 1414–15. The cases cited by the defendants in support of their argument to the contrary, *see United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012); *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005), were both decided prior to *Castleman*.

Although *Castleman* dealt with "physical force" as the term is used to define "misdemeanor crime of domestic violence" in 18 U.S.C. § 922(g)(9), its holding that an indirect application of force, such as through poison, is physical force still applies here. *Castleman* distinguished the term "physical force" in Section 922(g)(9) from Section 924 based on the degree of injury that results. *See Castleman*, 134 S. Ct. at 1412. Section 924 requires violent force, "force capable of causing physical pain or injury to another person." *United States v. Johnson*, 559 U.S. 133, 140 (2010). Whereas, Section 922(g)(9) only requires the level of force necessary to commit common law battery, including offensive touching that does not result in injury. *See Castleman*, 134 S. Ct. at 1410–11. But this distinction on the level of force and the degree of the resulting injury does not affect *Castleman*'s holding on how the force is applied, namely, that an indirect application of force, such as through poison, is still physical force. Thus assaulting someone or putting their life in jeopardy through the use of a dangerous weapon or device is a crime of violence.

Both the taking by force and violence or intimidation element, and the dangerous weapon or device element require the use, attempted use, or threatened use of force. Armed bank robbery is therefore a crime of violence under the elements test of 924(c)(3)(A). Thus, Counts Three and Five of the indictment are legally sufficient and dismissal of those counts is not warranted.

## IV.    Joinder

Moore, joined by Wilson, moved to sever Counts Two and Four of the indictment, which allege that the defendants committed armed bank robberies on November 4, and November 12, 2013, respectively. *See* Def. Moore's Mot. to Sever (Doc. No. 149); Indictment (Doc. No. 27), at 8, 10. The Court denied the motion to sever on September 20, 2016.

The presence of a conspiracy count linking the two bank robberies made the initial joinder of the offenses appropriate. And the defendants have not shown that joinder is sufficiently prejudicial, especially considering the benefits to judicial economy from a single trial. Any prejudice that does exist can be appropriately remedied through a limiting instruction.

### A.    *Misjoinder*

The joinder of offenses is governed by Rule 8 of the Federal Rules of Criminal Procedure, which provides:

> **(a) Joinder of Offenses.** The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

**(b) Joinder of Defendants.** The indictment or information may charge 2 more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8. The defense relies on Rule 8(a) in its motion, while the government relies on Rule 8(b) in its response. Def. Moore's Mot. to Sever, at 3; Gov't's Omnibus Resp. (Doc. No. 165), at 8. Although on its face Rule 8(a) appears to state the rule for joinder of offenses, in multi-defendant cases, the "tests for joinder of counts and defendants is merged in Rule 8(b)." *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003) (quoting *United States v. Somers*, 496 F.2d 723, 729 n.8 (3d Cir. 1974)). Since Rule 8(a) is more permissive than 8(b)—it allows joinder not only if the offenses are connected but also if they are of the "same or similar character"—offenses that pass the test for joinder under Rule 8(b) would also pass under 8(a). *See United States v. Irizarry*, 341 F.3d 273, 287 n.4 (3d Cir. 2003); *United States v. Walker*, 657 F.3d 160, 169 (3d Cir. 2011). This Court will therefore analyze the joinder of the offenses the defendants are charged with under Rule 8(b).

Offenses joined under Rule 8(b) must be part of the "same series of acts or transactions," meaning that there must be a "transactional nexus" between the offenses, *Walker*, 657 F.3d at 169. An allegation of conspiracy is sufficient to show there is a nexus between underlying substantive counts. *United States v. Eufrasio*, 935 F.2d 553, 567 (3d Cir. 1991); *United States v. Somers*, 496 F.2d 723, 729–30 (3d Cir. 1974).

The charge of conspiracy to commit armed bank robbery links the two substantive bank robbery counts and makes their joinder appropriate. The Grand Jury indicted the defendants on five separate counts, among them two counts of armed bank robbery in

26

violation of Title 18, Section 2113(d), and a count of conspiracy to commit armed bank robbery in violation of Title 18, Section 371. "[P]rovided that the conspiracy charge is put forward in good faith, the combination of a conspiracy count with counts charging acts in furtherance of the conspiracy will survive attack under Rule 8(b)." *Somers*, 496 F.2d at 730. The indictment charges a conspiracy to commit two separate bank robberies, the very same robberies that are charged in Counts Two and Four. Indictment, at 8, 10. There is no allegation of any bad faith in charging conspiracy, thus the joinder of the two underlying substantive robbery counts is proper.

> B. *Severance*

Even where counts have been properly joined, Rule 14 provides that a court may sever the offenses into separate trials if the joinder prejudices a defendant. Fed. R. Crim. P. 14. Any prejudice must be balanced against the public's interest in judicial economy, particularly in conspiracy cases where the evidence is likely to overlap. *See Eufrasio*, 935 F.2d at 568; *United States v. Segal*, 534 F.2d 578, 583 (3d Cir. 1976). Thus the "heavy burden" of showing prejudice lies with the defense, which must demonstrate that there would be "clear and substantial prejudice resulting in a manifestly unfair trial." *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005) (quoting *United States v. Palma–Ruedas*, 121 F.3d 841, 854 (3d Cir.1997), *rev'd on other grounds by United States v. Rodriguez–Moreno*, 526 U.S. 275 (1999)). Establishing that severance would improve the defendants' chances at trial is not enough. *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992). The defense must show that joinder poses a "serious risk that . . . would compromise a specific trial right of one of the defendants, or prevent the jury from

making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

The "critical issue" in evaluating prejudice is whether the jury can compartmentalize the evidence, considering it only for the counts it pertains to. *United States v. John-Baptiste*, 747 F.3d 186, 197–198 (3d Cir. 2014). The jury's ability to compartmentalize the evidence is affected by the complexity of the case, in terms of the number of charges and defendants, as well as the presence of technical or scientific issues. *See United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005); *United States v. Weber*, 437 F.2d 327, 332 (3d Cir. 1970). Even if the defense makes the necessary showing of prejudice, Rule 14 does not require severance; instead leaving the remedy to the district court's discretion. *Zafiro*, 506 U.S. at 538–39. An appropriate limiting instruction will normally be sufficient to "cure any risk of prejudice." *Kansas v. Carr*, 136 S. Ct. 633, 645 (2016); *Walker*, 657 F.3d at 171.

The defense has not met their burden of establishing sufficient prejudice, particularly given concerns of judicial economy. Evidence from both robberies is relevant to the conspiracy charge. And the government has indicated that it would need to offer duplicative testimony if the robberies were tried separately, as the same law enforcement officers and cooperating coconspirators would need to testify in both cases. Gov't's Omnibus Resp., at 13. The government has also alleged that both robberies had a similar *modus operandi*: three perpetrators entered the banks; they wore disguises; one locked the door while the other two approached the tellers; a gun was pointed at the banks' employees and customers to force them to the ground; money was taken from the teller drawers; and then all three perpetrators exited by the rear door to a waiting car.

Indictment, at 3–4, 6–7. The similar manner in which the robberies were conducted and the presence of a conspiracy count linking them raises strong judicial economy grounds for joinder. *See Gov't of Virgin Islands v. Sanes*, 57 F.3d 338, 342 (3d Cir. 1995); *Segal*, 534 F.2d at 583.

Balanced against the benefits of joinder is the defense's plainly insufficient showing of prejudice. Moore argues that joinder will impair his ability to testify in his own defense as to one robbery, as taking the stand will expose him to questions about the other robbery. Def. Moore's Mot. to Sever, at 5. Yet for severance to be based on impairing a defendant's right to testify, "it is essential that the defendant present enough information regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other to satisfy the court that the claim of prejudice is genuine." *United States v. Reicherter*, 647 F.2d 397, 401 (3d Cir. 1981) (quoting *Baker v. United States*, 401 F.2d 958, 977 (D.C. Cir. 1968). Moore has not offered any information about the nature of his testimony to support his claim that joinder is prejudicial. His claim of prejudice on that ground is insufficient.

Moore also argues the jury will be unable to compartmentalize the evidence it hears, and thus may "infer a criminal propensity," or rely on "hostility regarding one or more charged crimes . . . as reason to punish Mr. Moore." Def. Moore's Mot. to Sever, at 5. But the lack of complexity in this case—only two defendants and five counts— suggests that the jury should be able apply the evidence to the appropriate charge. *See Davis*, 397 F.3d at 182. Severance is therefore not justified.

## V.       Cell Site Location Information

Defendant Wilson moved to suppress the cell site location information ("cell site data") obtained by the government through a federal court order and a Pennsylvania state search warrant. *See* Mot. to Suppress Cell Phone Records and Data (Doc. No. 161). The search warrant authorized the Lower Merion Police to obtain records from Wilson's cellphone provider from October 1 to November 13, 2013. Affidavit of Probable Cause, Gov't's Omnibus Resp. Ex. A (Doc. No. 165). The federal court order authorized the acquisition of records from November 1 to December 31, 2013. Jan. 24, 2014, Order of Judge Angell, Gov't Omnibus Resp. Ex. B. On September 20, 2016, this Court denied Wilson's motion. The cell site data obtained by the government is admissible because the government's actions did not constitute a "search" falling under the protection of the Fourth Amendment. Even if the government had violated the Fourth Amendment, its good faith reliance on binding appellate precedent and a search warrant would make suppression of the data inappropriate.

### A.       *Legal Standard*

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has articulated two tests for determining whether state action is a search subject to the constraints of the Fourth Amendment: First, if the government "physically occupie[s] private property for the purpose of obtaining information," *United States v. Jones*, 132 S. Ct. 945, 949 (2012), or second, if the government violates an expectation of privacy that society would recognize as reasonable, *see Katz v. United States*, 389 U.S. 347, 361

(1967) (Harlan, J., concurring). If the challenged government action does not fall within either category, it cannot violate the Fourth Amendment prohibition on unreasonable searches. *See United States v. Stanley*, 753 F.3d 114, 118 (3d Cir. 2014).

There is no allegation of a physical trespass here; instead, Wilson argues that the government infringed on his privacy expectations. For an infringement on such expectations to constitute a search, a defendant must have had a subjective expectation of privacy in the cellphone data, and that expectation must have been objectively reasonable. *See id.* Individuals do not have a legitimate expectation of privacy in their location or movement outside of the home. *Compare United States v. Knotts*, 460 U.S. 276, 281 (1983) (police monitoring of an electronic tracking beeper in a vehicle on a public road does not violate the Fourth Amendment because the individual's location could have been physically observed), *with United States v. Karo*, 468 U.S. 705, 714 (1984) (police monitoring of an electronic tracking beeper inside a private residence violates the Fourth Amendment because of the justifiable expectation of privacy in the home). Because anyone nearby can see the location of an individual in public, there is no reasonable expectation of privacy in that location regardless of whether the government obtains its information through traditional visual surveillance or instead through some technological means. *See Knotts*, 460 U.S. at 282-83.

As a result, individuals do not have a reasonable expectation of privacy in cell site data that provides their approximate location. *See In re Application of United States for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't* ("*In re Application*"), 620 F.3d 304, 312–313 (3d Cir. 2010). The privacy interests involved in electronic tracking—at least at the level of precision of cell site data—"are confined to

the interior of the home." *In re Application*, 620 F.3d at 312. Cell site data is not accurate enough to reveal information inside the home, and thus does not implicate the Fourth Amendment. *See id.* at 312–313.[3]

### B. Data obtained through the Section 2703(d) order

The cell site data obtained by the government cannot be suppressed under the Fourth Amendment because there was no "search." The Third Circuit's decision in *In re Application* that there is no reasonable expectation of privacy in cell site data is controlling. The government did not seek GPS data, which may be accurate enough to pierce the privacy of the home, but instead only sought cell site data. Affidavit of Probable Cause, Gov't Omnibus Resp. Ex. A; Appl. for Cell Site Information, Gov't Omnibus Resp. Ex. B. Although Wilson suggests that technological advances have created some circumstances where cell site data can more precisely identify a cellphone's location, Def. Wilson's Mot. to Suppress Cell Phone Records (Doc. No. 161), at 6, there is nothing in the record to suggest that the data obtained by the government in this case was accurate enough to implicate the privacy interest in the home. In fact, the government has indicated that the information it obtained "show[ed] only which cell tower handled the call at its inception and its termination," providing only "very general location information." Gov't Omnibus Resp., at 42. Wilson therefore lacked any reasonable expectation of privacy in that data upon which a Fourth Amendment claim could be based.

---

[3] In addition to the Third Circuit, every other federal Court of Appeals to address the issue has found that government collection of cell site data does not violate the Fourth Amendment. *See United States v. Graham*, 824 F.3d 421 (4th Cir. 2016); *United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016); *United States v. Davis*, 785 F.3d 498 (11th Cir.) (en banc); *In re Application of United States for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013).

Although the Fourth Amendment is not implicated, Congress has provided by legislation that a court order for cell phone data can only issue if the government "offers specific and articulable facts showing that there are reasonable grounds to believe . . . the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). The Third Circuit explicitly approved this procedure in *In re Application*. 620 F.3d at 313. Here, the government obtained its information through just such a court order, and Magistrate Judge Angell found that the government had made the appropriate showing. Jan. 24, 2014, Order of Judge Angell, Gov't Omnibus Resp. Ex. B. Wilson does not challenge the Magistrate Judge's finding that the government made the showing required under Section 2703(d). And even if he had, suppression is not a remedy for violations of the Stored Communications Act. *See United States v. Guerrero*, 768 F.3d 351, 358 (5th Cir. 2014); *United States v. Perrine*, 518 F.3d 1196, 1202 (10th Cir. 2008).

### C.     *Data obtained by the Lower Merion Township Police*

The lack of a Fourth Amendment "search" also dooms Wilson's challenge to the admissibility of the earlier cellphone data received by the government from the Lower Merion Township Police Department. Evidence obtained by state officials is admissible so long as it complies with the federal constitution. *See United States v. Rickus*, 737 F.2d 360, 363–64 (3d Cir. 1984). Even if state officials violated state law to acquire the evidence, it will not be suppressed unless the officials also violated federal law. *See Rickus*, 737 F.2d at 364.

In an effort to comply with Pennsylvania state law, *see* 18 Pa. Cons. Stat. § 5743, the Lower Merion Police obtained a search warrant for the cellphone data from a state

magistrate judge, Affidavit of Probable Cause, Gov't's Omnibus Resp. Ex. A. Wilson
argues there was insufficient probable cause for that warrant to issue. Even accepting, for
the sake of argument, that the warrant was invalid, the evidence obtained is still
admissible in this Court because there was no federal constitutional violation. As
previously addressed, cell site data is not protected by the Fourth Amendment and no
warrant or probable cause is needed to obtain it under federal law. *See In re Application*,
620 F.3d at 312–13. Thus even if there was insufficient evidence under state law for the
police to obtain the data, there are still no grounds for suppression. *See Rickus*, 737 F.2d
at 364.

D.    *Good Faith Exception*

The government's good faith reliance on binding appellate precedent and a search
warrant make suppression inappropriate even if the government had violated the Fourth
Amendment. Suppression of evidence obtained in violation of the Fourth Amendment is
not automatic; it is limited to those cases where it will "appreciably deter governmental
violations of the Fourth Amendment." *United States v. Katzin*, 769 F.3d 163, 170 (3d Cir.
2014) (en banc). When the government's agents have an "objectively reasonable belief
that their conduct did not violate the Fourth Amendment," the deterrent value of
suppression is not sufficient to outweigh the cost to the truth-finding function of the
criminal justice system. *United States v. Leon*, 468 U.S. 897, 918 (1984). Thus the
exclusionary rule does not apply where law enforcement acts in objectively reasonable
reliance on binding appellate precedent, *Davis v. United States*, 564 U.S. 229, 241
(2011), or a search warrant issued by a neutral magistrate, *Leon*, 468 U.S. at 922.

Here, federal law enforcement relied on binding appellate precedent: the Third

Circuit's decision in *In re Application*, 620 F.3d 304. *See* Gov't's Omnibus Resp., at 45.

*In re Application* permitted the government to obtain cell site data without a warrant or

probable cause through a court order under Title 18, Section 2703(d). The government's

good faith reliance on this decision precludes suppression of the evidence it obtained

through that order. *See Katzin*, 769 F.3d at 171–72. Similarly, the Lower Merion Police

sought and obtained a warrant from a neutral magistrate before obtaining Wilson's

cellphone data. Affidavit of Probable Cause, Gov't's Omnibus Resp. Ex. A. The officers'

reasonable reliance on that warrant would also prevent the application of the exclusionary

rule. *See Leon*, 468 U.S. at 922.


**VI.** **Conclusion**

For the foregoing reasons, the Court denied the defendants' Motion to Dismiss the

Indictment (Doc. No. 142), Motion to Dismiss Counts Three and Five of the Indictment

(Doc. No. 159), Motion to Sever (Doc. No. 27), and Motion to Suppress Cell Phone

Records and Data (Doc. No. 161).

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.
