**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO.  14-209-1** |
| | : | |
| **MARQUIS WILSON** | : | |

**MEMORANDUM**

**KEARNEY, J.**                                                                                    **April 24, 2020**

In December 2018, Congress passed and the President signed The First Step Act which, among other allowances, permits persons serving federal sentences in prison to seek a compassionate release from his sentencing judge based on compelling and extraordinary reasons if the Bureau of Prisons does not grant his request within thirty days.  Before then, the Bureau of Prisons needed to approve the request before a federal judge could grant compassionate release. And before March 2020, our experience with exhausted motions for compassionate release generally involved compelling reasons such as end-of-life care for terminally ill federal prisoners.[1] But beginning in late 2019 and continuing today, our global community is facing a COVID-19 pandemic affecting at-risk federal prisoners just like everyone else; but unlike most, prisoners are in closed quarters with each other 24/7.  Three weeks ago, our Court of Appeals held prisoners seeking release due to COVID-19 risk must still exhaust with the Bureau of Prisons.   We today address whether a federal prisoner's Summer 2019 request for release based on a cancer diagnosis satisfies this mandate. Given Congress' clear language as interpreted by our Court of Appeals, we today deny the federal prisoner's *pro se* motion for failing to exhaust.  The Bureau of Prisons denied his Summer 2019 request based on developing cancer, not based on the fear of contracting COVID-19 as a compromised at-risk person.  Absent exhausting his request with the Bureau of Prisons, we cannot address whether he is entitled to compassionate release.

I.      **Background**

On April 24, 2014, our grand jury indicted Marquis Wilson for conspiracy to commit armed robbery of two banks, committing the armed bank robberies, and using or carrying a firearm during the robberies.[2]  The jury unanimously found Mr. Wilson guilty of the charges.[3]  Following random reassignment, we held a sentencing hearing on January 8, 2018 and made specific findings requiring a sentence of 519 months' imprisonment and two years' supervised release.[4]  Mr. Wilson is appealing this sentence to our Court of Appeals.[5] Mr. Wilson's current release date is November 13, 2051.[6]  He is currently housed at the medium security Federal Correctional Institute in Allenwood, Pennsylvania ("FCI Allenwood").[7]

### A.  COVID-19 affecting incarcerated persons.

Mr. Wilson *pro se* seeks a reduction of his sentence because of COVID-19 presenting an extraordinary circumstance warranting compassionate release under the First Step Act.  The new, or novel, "coronavirus disease 2019," known as COVID-19, is a respiratory disease spreading from person to person "mainly through respiratory droplets produced when an infected person coughs or sneezes.  These droplets can land in the mouths or noses of people who are nearby or possibly be inhaled into the lungs.  Spread is more likely when people are in close contact with one another (within about 6 feet)."[8]   COVID-19 spreads "easily and sustainably in the community ("community spread") in many affected geographic areas. Community spread means people have been infected with the virus in an area, including some who are not sure how or where they became infected."[9]  The Centers for Disease Control and Prevention traces the spread of COVID-19 to the first cases reported in Wuhan, China in December 2019.[10]

COVID-19, which has now spread throughout Asia, Europe, and North America, poses a serious global public health risk.  As of April 23, 2020, the Centers for Disease Control and Prevention reported a total of 828,441 cases of COVID-19 in the United States with 46,379 total

deaths caused by the virus.[11]   People over age sixty-five and those of any age with serious underlying medical conditions may be at higher risk for severe illness from COVID-19, including those with heart disease, asthma, diabetes, lung disease, or a weakened immune system.[12]   A weakened immune system may occur due to "cancer treatment, bone marrow or organ transplantation, immune deficiencies, HIV with a low CD4 cell count or not on HIV treatment, and prolonged use of corticosteroids and other immune weakening medications."[13]

As of April 22, 2020, there is one staff member at FCI Allenwood with COVID-19.[14] There are no reports of inmates with COVID-19.  Correctional and detention facilities "present unique challenges for control of COVID-19 transmission among incarcerated/detained persons [and] staff[.]"[15]  According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[16]

### B.  Mr. Wilson's present health.

Mr. Wilson moves for compassionate release from FCI Allenwood asserting he fears for his safety because of COVID-19.[17]  Mr. Wilson explains he is at higher risk to suffer from severe illness from COVID-19 because he has cancer and has been going through vigorous rounds of chemotherapy.  Mr. Wilson also had his lymph nodes removed during his cancer treatment, which he states "further compromised his already weakened immune system and made him susceptible to all manner of diseases which could become lethal."[18]

Mr. Wilson requested compassionate release through the Bureau of Prisons last summer. The Warden denied his request in September 2019.  There is no evidence Mr. Wilson requested compassionate release because of his apparent at-risk vulnerability to COVID-19 at FCI Allenwood.

II.      **Analysis**

We may not modify a term of imprisonment after its imposition except in limited circumstances.[19]  One exception, authorized by the First Step Act, allows criminal defendants to seek compassionate release from a sentencing court for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).[20]  The First Step Act, passed by Congress in December 2018, amended section 3583(c)(1)(A) "to allow prisoners to directly petition courts for compassionate release, removing the [Bureau of Prison's] exclusive 'gatekeeper' role."[21]  Under the First Step Act, prisoners have "two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the [Bureau of Prison's] decision not to file a motion, or (2) file a motion after 'the lapse of 30 days from the receipt ... of such a request' by the warden of the defendant's facility, 'whichever is earlier.'"[22]

Mr. Wilson moves for compassionate release for "extraordinary and compelling reasons" citing his potential to suffer serious health consequences if he contracted COVID-19 due to underlying medical conditions and his special risk of exposure in FCI Allenwood.  Mr. Wilson argues we may consider the merits of his motion because he unsuccessfully petitioned the Bureau of Prisons for compassionate release before the global COVID-19 outbreak.  The United States responds Mr. Wilson has not fulfilled Congress' mandate because he failed to fairly present his current grounds for compassionate release to the Bureau of Prisons.

Our analysis must begin with our Court of Appeals' holding in *United States v. Raia.*[23]  Judge Martini sentenced Francis Raia to three months imprisonment for conspiring to use the mails to promote unlawful activity in violation of federal law.[24]  The United States appealed this sentence as too lenient; but on March 3, 2020, Mr. Raia reported to the federal correctional institution in Fairton, New Jersey to begin the sentence.  Within weeks, Mr. Raia asked the Bureau of Prisons for his compassionate release.  Before thirty days passed, Mr. Raia filed his own motion to Judge

4

Martini for compassionate release given the COVID-19 pandemic and his heightened risk of serious illness or death from the virus.

Judge Martini determined he did not have jurisdiction because of the pending appeal but, in a footnote, stated he would have granted Mr. Raia's motion. Rather than appealing Judge Martini's order, Mr. Raia directly moved our Court of Appeals to decide his compassionate release motion or to reinstate Judge Martini's jurisdiction by dismissing the appeal or by remand. Our Court of Appeals held Congress did not grant it the authority to decide compassionate release motions—Congress gave this authority explicitly to the sentencing court. And the Court of Appeals held it could not dismiss the appeal and remand would be futile because "Mr. Raia failed to comply with § 3582(c)(1)(A)'s exhaustion requirement: BOP has not had thirty days to consider Raia's request to move for compassionate release on his behalf, and there has been no adverse decision by BOP for Raia to administratively exhaust within that time period[.]"[25]

In denying Mr. Raia's motion, our Court of Appeals explained:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See generally* Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp. Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance. And given the Attorney General's directive that BOP "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," we anticipate that the statutory requirement will be speedily dispatched in cases like this one. Memorandum from Attorney Gen. to Dir., Bureau of Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. So we will deny Raia's motion.[26]

While there are contrary views, this is the standard we apply in this District.[27] In light of our Court of Appeals' "strict compliance" with Congress' exhaustion requirement, we must

consider whether Mr. Wilson's pre-COVID-19 request for compassionate release meets § 3582(c)(1)(A)'s exhaustion requirement.

Mr. Wilson's Summer 2019 request does not satisfy Congress' requirement when considering the purpose of congressional design and regulations outlining compassionate release requests.  In the First Step Act, Congress decided Bureau of Prisons should have at least the first chance to determine a prisoner's suitability for compassionate release, and gave the Bureau of Prisons thirty days to consider a request in light of more general considerations about the conditions, needs at particular facilities and the prison system as a whole, and for the just and proper treatment of the prisoner based on his background and medical history.  To enable Bureau of Prisons to make this informed decision envisioned by Congress, the Bureau of Prisons must be fairly put on notice of the grounds for compassionate release.  By limiting a prisoner's access to the courts until exercising this requirement, Congress limited our discretion to excuse a failure to comply.[28]  The Bureau of Prisons require a request for compassionate release must  "at a minimum ... [contain] [t]he extraordinary or compelling circumstances that the inmate believes warrant consideration."[29]

Mr. Wilson failed to move the Bureau of Prisons for his compassionate release because of the extraordinary or compelling circumstance his preexisting health conditions present during the COVID-19 pandemic.  Having failed to show compliance with exhaustion requirements, we must dismiss Mr. Wilson's motion.  Even in the context of the COVID-19 pandemic, we are directed by our Court of Appeals in *Raia* "[g]iven the BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance."[30]   Mr. Wilson may later seek compassionate release after he exhausts his remedies with the Bureau of Prisons.

### III.     Conclusion

We deny Mr. Wilson's *pro se* motion for compassionate release without prejudice to renew with a showing he exhausted his request for compassionate release with the Bureau of Prisons along with supporting medical information to confirm his at-risk status.

---

[1] *See, e.g., United States v. Sotelo*, No. 14-652-6, 2019 U.S. Dist. LEXIS 135051 (E.D. Pa. Aug. 7, 2019).

[2] ECF Doc. No. 27.

[3] ECF Doc. No. 190.

[4] ECF Doc. No. 310.

[5] *United States v. Wilson*, No. 18-1079 (3d. Cir).

[6] ECF Doc. No. 310.

[7] ECF Doc. No. 361.

[8]   Centers for Disease Control and Prevention, *Coronavirus 2019 Basics*, https://www.cdc.gov/coronavirus/2019-ncov/faq.html?CDC_AA_refVal=https%3A%2F%2F www.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ffaq.html#Coronavirus-Disease-2019-Basics (last visited April 22, 2020).

[9] *Id.*

[10]  Centers for Disease Control and Prevention, *First Travel-related Case of 2019 Novel Coronavirus Detected in United States*, https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html (last visited April 24, 2020).

[11] Centers for Disease Control and Prevention, *Cases of Coronavirus Disease (COVID-19) in the U.S.*,  https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html  (last visited April 23, 2020).

[12] Centers for Disease Control and Prevention, *People who Need to Take Extra Precautions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.  html (last visited April 22, 2020).

[13] *Id.*

[14] Bureau of Prisons, *COVID-19: Coronavirus*, https://www.bop.gov/coronavirus/ (last visited April 22, 2020).

[15] Centers for Disease Control and Prevention, *Guidance for Correctional Detention*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited April 22, 2020).

[16] "Achieving A Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), at https://bit.ly/2W9V6oS.

[17] ECF Doc. No. 361.

[18] *Id.*

[19] 18 U.S.C. § 3582(c).

[20] Congress defines the required exhaustion:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;

*Id.* § 3582(c)(1)(A)(i).

[21] *United States v. Rodriguez*, No. 03-271, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020) (footnote omitted).

[22] *Id.* at * 3 (citing 18 U.S.C. § 3852(c)(1)(A)).

[23] *United States v. Raia*, 954 F.3d 594 (3d Cir. 2020).

[24] *Id.* at 596.

[25] *Id.* at 597.

[26] *Id.*

[27] We acknowledge our Court of Appeals' directive of "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement" has not been embraced by some courts outside of the Court of Appeals for the Third Circuit.  *See, e.g.*, *United States v. Sanchez*, No. 18-0140, 2020 WL 1933815 (D. Conn. April 22, 2020) (holding "[i]n light of this Congressional purpose, the Court finds it has the discretion to waive the 30-day waiting period where strict enforcement would not serve the Congressional objective of allowing meaningful and prompt judicial review. The immediate case, where each day threatens irreparable harm to a uniquely susceptible defendant, calls for such a waiver.").

[28] *Cf. Ross v. Blake*, 136 S. Ct. 1850 (2016) (rejecting a judicially created "special circumstances" exception to the exhaustion requirement stated in the Prison Litigation Reform Act).

[29] 28 C.F.R. § 571.61.

[30] *Raia*, 954 F.3d at 597.