**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 14-209-1 |
| | : | |
| MARQUIS WILSON | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                        December 31, 2020

      A convicted armed bank robber having completed approximately seventeen percent of his sentence later affirmed by our Court of Appeals today seeks compassionate release.  He fears contracting COVID-19 although he recovered from testicular cancer with no recurring health issues and otherwise believes we should change our Court of Appeals' holding on the fairness of his sentence based on the December 2018 First Step Act.  As our Court of Appeals reminded us in the appeal of this same sentence, Congress's amendment to the former stacking obligations of section 924(c) in the First Step Act is not retroactive. Our consistent view is compassionate release may be warranted for a combination of reasons, which may include the unfairness of stacking sentences. But today's case presents a situation where the Court of Appeals affirmed the sentence in response to essentially the same argument made today. The armed bank robber provides us with no further basis for release as he is not presently facing serious illness or greater risk of harm from COVID-19, nor does he raise other possible grounds for release at this stage. He further does not meet Congress' requirement of not posing a risk of danger to the community under any set of release conditions given his active role as a leader in orchestrating armed bank robberies while on state parole. We deny his motion for compassionate release without prejudice.

I.      **Facts**

Our jury found Marquis Wilson, Malcolm Moore and two other persons robbed two Wells Fargo bank branches.[1] Each of the four co-conspirators played a unique role.[2] One co-conspirator – a former Wells Fargo employee – signaled to the others when they should enter the branches.[3] When given the signal, state parolee Mr. Wilson and two of his co-conspirators wearing masks and armed with firearms entered the banks, announced a robbery, and ordered the employees and customers to the floor at gunpoint.[4] While one co-conspirator remained by the front door to ensure no one left or entered the bank, Mr. Wilson and another co-conspirator jumped over the customer counter and demanded money from the bank employees.[5] Mr. Wilson and his co-conspirators stole over $150,000 from the two branches.[6]

Subsequent investigation revealed Mr. Wilson helped orchestrate both robberies.[7] Federal agents arrested Mr. Wilson in January 2014.[8] The Grand Jury indicted Mr. Wilson for conspiracy to commit armed bank robbery armed bank robbery and aiding and abetting and carrying, using, and aiding and abetting the use and carrying of a firearm in relation to a crime of violence.[9] A jury found Mr. Wilson guilty on all counts.[10]

Mr. Wilson committed the robberies while serving a two-year term of probation for a state court conviction for driving a stolen vehicle.[11] Mr. Wilson also has three juvenile adjudications.[12] After considering Mr. Wilson's criminal history, his significant role in the bank robberies, and the then-existing mandatory minimum sentences for firearm offenses, we sentenced Mr. Wilson to 519 months' imprisonment and two years of supervised release.[13] Mr. Wilson's 519-month sentence consisted of sixty months on the conspiracy and robbery counts to run concurrently with each other, a seven-year mandatory minimum sentence on the first firearm charge to be served consecutively, and a mandatory minimum twenty-five year

sentence on the second firearm charge also to be served consecutively.[14] We decided to impose a sentence greater than these mandatory minimums upon consideration of the sentencing factors. Since we imposed this sentence, Congress, through the First Step Act, changed the law mandating Mr. Wilson's firearm sentences be served consecutively to other sentences, or "stacked" on top of each other. This stacking requirement now applies only if the defendant had a previous, final conviction for a firearm offense, rather than in all cases with multiple firearm offenses brought in the same prosecution.[15] Since Mr. Wilson did not have final firearm conviction at the time of the instant robberies, he could be sentenced to a minimum 303-month sentence – eighteen-years less than his imposed sentence – if sentenced today.

Mr. Wilson appealed his sentence, arguing the First Step Act's amendment to the stacking language in section 924(c) should apply retroactively to lower his mandatory minimum sentence.[16] Mr. Wilson also challenged the reasonableness of the sentence imposed.[17] Our Court of Appeals rejected Mr. Wilson's arguments and affirmed his sentence reminding him the amendments to the stacking of sentences are not retroactive.[18]

Mr. Wilson is currently serving his sentence at the medium security division of Federal Correctional Institution Allenwood. Accounting for credit for time served, Mr. Wilson has served approximately ninety-three months, or 17.92%, of his sentence. His projected release date is January 23, 2051.[19]  Correctional officers have already sanctioned Mr. Wilson on at least seven occasions for destruction of property, possession of a dangerous weapon, giving or accepting money without authorization, and refusal to obey orders.[20] Mr. Wilson represents he has dedicated himself to rehabilitation while incarcerated but has not been able to complete programming due to his cancer treatment and the current pandemic.[21]

**A.      Mr. Wilson's health.**

Doctors diagnosed Mr. Wilson with testicular cancer in October 2017.[22] He completed cancer treatment – consisting of surgery and four cycles of chemotherapy – in September 2018.[23] He subsequently underwent retroperitoneal lymph node dissection for two masses.[24] His cancer has since been in remission and a CT scan performed in August 2019 showed no recurrence.[25] The Bureau of Prison periodically scans and tests Mr. Wilson.  He has not experienced complications from his cancer.[26]

Although not reflected in his medical records, the United States represents Mr. Wilson tested positive for COVID-19 on November 23, 2020.[27] Mr. Wilson apparently remained asymptomatic and is now deemed recovered.[28]

**B.      COVID-19 affecting FCI Allenwood inmates and staff members.**

While not presently ill, twenty-nine-year-old Mr. Wilson asks us to review the effects of COVID-19 in granting him release.  He explains Bureau of Prisons' inmates and staff members have contracted "coronavirus disease 2019," also known as COVID-19.[29] COVID-19 is a respiratory disease spreading mainly through droplets produced when an infectious person, even one who is asymptomatic, talks, coughs, or sneezes.[30]  The virus can also be spread through the air.[31]  The practice of social distancing – staying six feet away from others – can help reduce the spread of the virus.[32]

COVID-19 poses a serious global public health risk. As of December 31, 2020, the United States Centers for Disease Control and Prevention reported a total of 19,432,125 cases of COVID-19 in the United States with 337,419 total deaths caused by the virus.[33]  Older adults and individuals at any age with underlying medical conditions such as cancer, chronic kidney

disease, COPD (chronic obstructive pulmonary disease), or serious heart conditions are at an increased risk of severe illness from COVID-19.[34]

Mindful correctional facilities face unique challenges in controlling the transmission of COVID-19, the Centers for Disease Control has issued guidance to prisons and correctional facilities to help them prevent the spread of COVID-19.[35]  Following this guidance, the Bureau of Prisons adopted aggressive safety measures, assuring "maintaining safety and security of [its] institutions is [its] highest priority."[36]  As of December 31, 2020, FCI Allenwood reports it has 158 active COVID-19 cases – 136 inmates and twenty-two staff members – in an inmate population of 1,077.[37]  Since the outbreak began, the Bureau of Prisons has confirmed 456 COVID-19 cases at FCI Allenwood having administered tests to 926 inmates.[38]

### C.     Mr. Wilson's plans if granted compassionate release.

Mr. Wilson plans to live in Georgia with his brother, the owner of a construction company, upon release.[39]  He will support himself financially by working at his brother's company, a restaurant, or a medical center.[40]

### D.     Mr. Wilson exhausted his remedies with the Bureau of Prisons.

Mr. Wilson exhausted his administrative remedies.[41]  He submitted a request for compassionate release to the Warden of FCI Allenwood on May 8, 2020.[42]  He received a response from the Warden denying his request on June 1, 2020 because, despite his cancer diagnosis, the Warden found Mr. Wilson is "not disabled or unable to perform activities of daily living."[43]  He moved for relief five months after he submitted his request to the Warden.

## II.     Analysis

Mr. Wilson moves *pro se* for compassionate release arguing his history of testicular cancer increases his risk of severe illness from COVID-19.[44]  He also mentions other district

courts have found the change in sentencing law for Section 924(c) firearm offenses presents an extraordinary and compelling reason for compassionate release.[45]

The United States opposes Mr. Wilson's motion.[46] It argues Mr. Wilson's successfully treated cancer does not increase his risk of severe illness from COVID-19, and even if it did, Mr. Wilson already contracted – and recovered – from COVID-19.[47] The United States further argues the First Step Act's amendment to section 924(c) does not constitute an extraordinary and compelling reason for Mr. Wilson's release because, even if Congress did make the amendment retroactive, he would face a twenty-five-year sentence of which he has only served eight years so far.[48] Even assuming Mr. Wilson presented an extraordinary and compelling reason for his release, the United States argues he should not be released because he is a danger to the community and the Section 3553(a) factors weigh against his release.[49]

We deny Mr. Moore's motion because he fails to present an "extraordinary and compelling reason" for his release, and he presents a danger to the community.

Congress allows us to reduce a sentence through compassionate release if we determine: (1) the incarcerated movant meets administrative exhaustion requirements, (2) "extraordinary and compelling reasons"[50] warrant a reduction, (3) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission," and (4) the applicable sentencing factors under 18 U.S.C. §3553(a) warrant a reduction.[51]   The applicable policy statements issued by the Sentencing Commission urge us to consider whether Mr. Wilson would be a danger to the community if released.[52]   Because Mr. Wilson has indisputably exhausted his administrative remedies, we assess whether Mr. Wilson presents an extraordinary and compelling reason for release, whether he presents a danger to the community, and whether the sentencing factors warrant reducing his sentence.

### A.   Mr. Wilson's past cancer is not an extraordinary and compelling reason for release.

Mr. Wilson first argues we should reduce his sentence because his cancer diagnosis increases his risk of severe illness from COVID-19.[53] He argues he underwent a rigorous chemotherapy regimen which weakened his immune system.[54] The United States argues his cancer no longer increases his risk of severe illness from COVID-19 because it has been in remission and because he no longer receives treatment.[55] It also argues any argument of increased risk is now moot because he tested positive for the virus and has since recovered.[56] Although Mr. Wilson's cancer can recur, we find Mr. Wilson's current health does not constitute an extraordinary and compelling reason for his release.

Our Court of Appeals instructs "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."[57] Consistent with this reasoning, courts have generally required the movant establish two things: "(1) advanced age or a serious medical condition that places them at a high risk of serious complications or death if infected with COVID-19; and (2) a more than mere speculative risk of exposure to the virus at the prison where the inmate is housed."[58] The Centers for Disease Control reports individuals who currently have cancer are at an increased risk of severe illness from COVID-19, although "it is not known whether having a history of cancer increases your risk."[59] According to the American Cancer Society, cancer patients actively receiving chemotherapy or a stem cell transplant are particularly at risk of severe illness from COVID-19 because their immune systems can be severely weakened from treatment.[60]

Judges deciding compassionate release motions where a petitioner's cancer is in remission typically evaluate whether the petitioner continues to face complications or deteriorating health from the cancer.  In *United States v. Scarpa*, for example, Judge Korman

7

found an elderly man diagnosed with late stage nasopharyngeal cancer presented extraordinary and compelling reasons for his early release because, even though he completed cancer treatment, he continued to suffer serious complications – including regular choking and difficulty swallowing – from his cancer and his treatment had taken a toll on his health.[61] In *United States v. Brewster*, Judge Jordan conversely found a petitioner with cancer, hepatitis B, and cirrhosis of the liver failed to present an extraordinary and compelling reason for his release because "[petitioner's] cancer is presently in remission and his liver conditions do not appear to substantially interfere with his functioning."[62] Judge Myerscough similarly denied compassionate release where petitioner had been treated for cancer in the past because "[h]is cancer is in remission, and there is no evidence that he is undergoing cancer treatment at this time."[63]

Mr. Wilson currently presents as a healthy twenty-nine-year-old. His medical records do not show complications or issues from his cancer. The records confirm the medical professionals successfully treated his cancer with surgery and chemotherapy, and the Bureau of Prisons continually monitors his health for recurrence. While we disagree with the United States' largely unsupported position risk of severe illness due to COVID-19 is now irrelevant because he has already apparently contracted the virus, we nevertheless find Mr. Wilson's cancer in its current state does not present an extraordinary and compelling reason for his release.

**B.      The stacking of Mr. Wilson's firearms sentences does not present an extraordinary and compelling reason for his release.**

Mr. Wilson also mentions we imposed his sentence before the First Step Act's 2018 amendment to section 924(c), and other district courts have found this amendment to be an extraordinary and compelling reason for release.[64] The United States disputes stacking is a proper basis for a sentence reduction and argues, even if is, Mr. Wilson is not entitled to such

relief because he served approximately eight years of the twenty-five-year sentence he would have received if sentenced today.[65]

We first consider the impact the section 924(c) amendments would have had on Mr. Wilson's sentence. If we sentenced Mr. Wilson today, he would not face the mandatory consecutive sentence for a second firearm charge in the same case. But at the time of Mr. Wilson's sentencing, Congress mandated a seven-year sentence for the first possession of a firearm in furtherance of a crime of violence and a mandatory minimum consecutive sentence of twenty-five years for the possession of a firearm in furtherance of a crime of violence even when in the same case. Because a jury found Mr. Wilson guilty of two robberies – despite the fact the robberies occurred over one week apart – the law required we impose a seven-year sentence for the first possession of a firearm in furtherance of a crime of violence and a mandatory twenty-five-year sentence for the second possession of a firearm in furtherance of a crime of violence.

In December 2018, Congress amended section 924(c) to ensure the twenty-five-year consecutive term for a successive 924(c) offense does not apply unless the defendant had a previous, final section 924(c) conviction at the time of the offense. So instead of the 519-month sentence Mr. Wilson currently serves, he would be sentenced to a minimum 303-month sentence today.

Despite the sentence disparities between those sentenced before and after the First Step Act, Congress declined to make this change to section 924(c) retroactive. Our Court of Appeals affirmed our sentence in response to this same argument.[66]  We have no basis today to find the disparity of sentences alone is an extraordinary and compelling reason to reduce a sentence.

We analyzed the impact of Congress' decision not to specifically make the amended section 924(c) retroactive in today's opinion in *United States v. Harris*, which offers a fair

contrast to Mr. Wilson's argument.[67] In *Harris,* we analyzed cases decided since we last visited the issue in *Adeyemi* over five months ago.  As in *Adeyemi*, we concluded – after consideration of statutory language, legislative intent, and recent case law – district courts can consider the change in sentencing for section 924(c) offenses as a factor in our individualized compassionate release inquiries. But we also concluded the amendment to section 924(c) could not singularly constitute an extraordinary and compelling reason warranting compassionate release. In granting compassionate release in *Harris*, we found petitioner presented other factors supporting his release which, when combined, constituted extraordinary and compelling reasons. We found it significant, for example, petitioner productively spent his over twenty-three years in prison by working as a sewing machine operator, participating in numerous courses and workshops, and avoiding serious disciplinary infractions for thirteen years. We also found petitioner served over seventy percent of his sentence, which weighed in favor of finding extraordinary and compelling reasons for his release.

      Other judges in this District have similarly held this change in sentencing law, when combined with other factors, can constitute an extraordinary and compelling reason for a sentence reduction. In *United States v. Clausen*, for example, Judge Pappert found petitioner presented extraordinary and compelling reasons for his release based on his excessive sentence imposed before the First Step Act and evidence of exceptional rehabilitation during petitioner's over twenty years in jail.[68] Judge Pappert found it significant petitioner, despite being sentenced to life in prison, worked tirelessly to rehabilitate himself, including by avoiding disciplinary issues, completing over one-hundred Bureau of Prisons' educational programs, creating and facilitating prison reentry programs, obtaining certification as a life coach, and co-designing and facilitating victim impact courts.[69] Judge Beetlestone likewise granted compassionate release

based on a combination of factors – including the section 924(c) amendment, significant rehabilitation, lack of a prior criminal history, and concrete release plans – in *United States v. Pollard*.[70] She found petitioner's consistent employment in prison and participation in prison-sponsored activities weighed in favor of his release.[71]

The Court of Appeals for the Fourth Circuit in *United States v. McCoy*, consistent with the reasoning in *Adeyemi*, *Clausen*, and *Pollard*, recently affirmed the release of four petitioners who moved for a reduction in sentence primarily based on the change in sentencing law for section 924(c) convictions.[72] In affirming the grants of release, the Court of Appeals for the Fourth Circuit emphasized the individualized nature of the district courts' analyses in several consolidated appeals:

> The courts took seriously the requirement that they conduct individualized inquiries, basing relief not only on the First Step Act's change to sentencing law under § 924(c) but also on such factors as the defendants' relative youth at the time of their offenses, their post-sentencing conduct and rehabilitation, and the very substantial terms of imprisonment they already served.[73]

Mr. Wilson does not fare well under these recent decisions. Unlike Mr. Harris and the petitioners in *McCoy*, Mr. Wilson served seventeen percent of his sentence; even if we considered the sentence he would receive today, he would have served thirty percent of this shorter minimum sentence. Mr. Wilson also does not provide us with significant evidence of rehabilitation during his relatively short time in prison, unlike in *Harris*, *Clausen*, and *Pollard*. His presentence investigation report reveals Mr. Wilson received seven disciplinary infractions – one involving possession of a dangerous weapon – while awaiting trial. Mr. Wilson does not provide us educational transcripts from the Bureau of Prisons but explains he has not been able to complete programming due to his cancer diagnosis and the COVID-19 pandemic. While we

appreciate these obstacles, we cannot find Mr. Wilson today presents other factors, when combined with the amendment in sentencing law, warranting his compassionate release.

###    C.      Mr. Wilson poses a risk of danger to the community.

Even assuming Mr. Wilson presented extraordinary and compelling reasons for his release, Congress requires we consider whether Mr. Wilson presents "a danger to the safety of any other person or to the community" before we reduce a carefully considered sentence. Mr. Wilson fails to show he warrants a sentence reduction.

The Sentencing Commission's policy statement, while not binding, nonetheless offers helpful guidance and provides for granting a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[74] Section 3142(g) sets out factors we must consider when deciding whether to release a defendant pending trial.[75] These factors include: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence" or "involves a . . . firearm"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."[76]

As the United States notes, we recently denied compassionate release to Mr. Wilson's co-conspirator Malcolm Moore because we found he presented a danger to the community.[77] We found he posed a risk of danger even though he did not have a criminal history because he orchestrated and actively participated in the two serious bank robberies involving firearms with Mr. Wilson.[78] These factors similarly weigh against Mr. Wilson's early release. Mr. Wilson, like Mr. Moore, played an active, even leading, role in the robberies. During each robbery, Mr. Wilson demanded money from bank employees while Mr. Moore pointed a gun at

employees and customers. Before he robbed the banks at twenty-two years old, moreover, Mr. Wilson had already amassed three juvenile adjudications and an adult conviction, all involving either stolen vehicles or drugs. Indeed, he committed the bank robberies while out on probation for another offense. While his previous crimes do not necessarily involve the use of violence, they show Mr. Wilson's continued disregard for the law. The bank robberies also demonstrate an escalation of his criminal behavior. The correctional facility further imposed several disciplinary infractions while incarcerated. Mr. Wilson would pose a serious risk of danger to the community if released.

Consideration of the Section 3553(a) factors further weighs against Mr. Wilson's early release. Mr. Wilson served approximately seventeen percent of his total sentence and approximately thirty percent of the minimum sentence he would have received if sentenced today. Our Court of Appeals already rejected Mr. Wilson's stacking argument.[79] This relatively short amount of time served weighs against his early release because it does not reflect the seriousness of Mr. Wilson's offenses nor does it further the aims of deterrence and punishment.[80]

## III.   Conclusion

We deny Mr. Wilson's motion for compassionate release without prejudice because we find he fails to present extraordinary and compelling reasons for his release and, even if he did, he poses a risk of danger to the community if released.

---

[1] ECF Doc. No. 190.

[2] Dec. 7, 2017 Presentence Investigation Report [hereinafter "PSR"] ¶¶ 11-18

[3] *Id.* ¶¶ 11, 15.

[4] *Id.* ¶¶ 12, 16.

[5] *Id.* ¶¶ 13, 17.

[6] *Id.* ¶¶ 14, 18.

[7] *Id.* ¶¶ 46, 55.

[8] *Id.* ¶ 25.

[9] ECF Doc. No. 27.

[10] ECF Doc. No. 190.

[11] PSR ¶¶ 70, 72.

[12] *Id.* ¶¶ 65 – 67.

[13] ECF Doc. No. 341 at 31-33.

[14] *Id.* 31-37.

[15] *See* First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5222, § 403.

[16] *United States v. Wilson*, 960 F.3d 136, 151-52 (3d Cir. 2020).

[17] *Id.*

[18] *Id.*

[19] Federal Bureau of Prisons, *Inmate Locator* (last visited Dec. 30, 2020) https://www.bop.gov/inmateloc/.

[20] PSR ¶ 8.

[21] ECF Doc. No. 371 at 5-6.

[22] ECF Doc. No. 373-1 at 11.

[23] *Id.*

[24] *Id.* at 32, 62.

[25] *Id.* at 11.

[26] *Id.* at 28.

[27] ECF Doc. No. 385 at 6.

[28] *Id.*

---

[29] ECF Doc. No. 371 at 3-5.

[30] National Center for Immunization and Respiratory Diseases (NCIRD), Division of Viral Diseases, *Social Distancing: Keep a Safe Distance to Slow the Spread*, Centers for Disease Control and Prevention. (last updated Dec. 30, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html.

[31] *Id.*

[32] *Id.*

[33] United States Centers for Disease Control, *Coronavirus Disease 2019 (COVID-19) Data Tracker*, (last updated Dec. 30, 2020), https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days.

[34] National Center for Immunization and Respiratory Diseases (NCIRD), Division of Viral Diseases, *People with Certain Medical Conditions*, Centers for Disease Control and Prevention. (last updated Dec. 30, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html; https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html

[35] National Center for Immunization and Respiratory Diseases (NCIRD), Division of Viral Diseases, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control and Prevention (last updated Dec. 3, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.

[36] Federal Bureau of Prisons, *Updates to BOP COVID-19 Action Plan, Inmate Movement* (last updated Mar. 19, 2020), https://www.bop.gov/resources/news/20200319_covid19_update.jsp.

[37] Federal Bureau of Prisons, *COVID-19 Cases* (last updated Dec. 30, 2020), https://www.bop.gov/coronavirus/; https://www.bop.gov/locations/institutions/alm/.

[38] Federal Bureau of Prisons, *COVID-19 Inmate Test Information* (last updated Dec. 30, 2020), https://www.bop.gov/coronavirus/.

[39] ECF Doc. No. 371 at 5-6.

[40] *Id.*

[41] The United States does not dispute Mr. Wilson exhausted his administrative remedies.

[42] ECF Doc. No. 371 at 8. Mr. Wilson first moved *pro se* for compassionate release in April 2020. We denied his motion without prejudice because he had not yet exhausted his administrative remedies with the Bureau of Prisons.

[43] *Id.*

[44] ECF Doc. No. 371.

[45] *Id.* at 2.

[46] ECF Doc. No. 385.

[47] *Id.* at 14-18.

[48] *Id.* at 19-20.

[49] *Id.* at 18-19.

[50] Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines outlines circumstances constituting "extraordinary and compelling reasons" under which district courts may reduce a term of imprisonment:

(A)      Medical Condition of the Defendant.—

(i)      The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)      The defendant is—

(I)      suffering from a serious physical or medical condition,

(II)      suffering from a serious functional or cognitive impairment, or

(III)      experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the defendant.— The defendant (i) is at least 65 years old; (ii) is experiencing a serios deterioration in physical or mental health because of the aging process; and (3) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—
      (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
      (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the [Bureau of Prisons], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13, Application Note 1(A)-(D).

[51] 18 U.S.C. § 3582.

[52] *See, e.g.*, *United States v. Slone*, No. 16-400, 2020 WL 3542196, at *8-9 (E.D. Pa. June 30, 2020).

[53] ECF Doc. No. 371 at 5.

[54] *Id.*

[55] ECF Doc. No. 385 at 14 n.3.

[56] *Id.* at 16-18.

[57] *United States v. Raia*, 954 F. 3d 594, 597 (3d Cir. 2020).

[58] *United States v. Phillips*, No. 09-718, 2020 WL 5076753, at *3 (E.D. Pa. Aug. 27, 2020) (citation omitted).

[59] *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#cancer; *see also* American Cancer Society, *Common Questions About the COVID-19 Outbreak* (last updated Dec. 21, 2020), https://www.cancer.org/latest-news/common-questions-about-the-new-coronavirus-outbreak.html ("Most people who were treated for cancer in the past (especially if it was years ago) are likely to have normal immune function, but each person is different.").

[60] *See Common Questions About the COVID-19 Outbreak*, https://www.cancer.org/latest-news/common-questions-about-the-new-coronavirus-outbreak.html.

---

[61] No. 94-1119-1, 2020 WL 6591455, at 1-2 (E.D.N.Y. Nov. 11, 2020); see also *United States v. Brown*, No. 13-176, 2020 WL 2615616, at *2-4 (E.D. Pa. May 22, 2020) (granting compassionate release where petitioner with multiple myloma failed to achieve remission after twelve rounds of chemotherapy and staffing shortages in correctional facility left petitioner without necessary medication and caused her to miss medical appointments).

[62] No. 15-104, 2020 WL 5603920, at *3 (E.D. Tenn. Sept. 17, 2020); *see also United States v. Mason*, No. 18-329, 2020 WL 4034835, at *3 (W.D. Pa. July 17, 2020) (concluding petitioner with colon cancer in remission, among other illnesses, failed to present extraordinary and compelling reasons for his release because his conditions did not "substantially diminish[] his ability to provide self-care within a correctional environment").

[63] *United States v. Loomis*, No. 18-30020, 2020 WL 3868387, at *2 (C.D. Ill. July 9, 2020).

[64] ECF Doc. No. 371 at 1.

[65] ECF Doc. No. 385 at 19-21.

[66] *Wilson*, 960 F.3d at 151-52.

[67] *United States v. Harris*, No. 97-399, ECF Doc. No. 90 (Dec. 31, 2020).

[68] No. 00-291-2, 2020 WL 4260795, at *7-8 (E.D. Pa. July 24, 2020).

[69] *Id.* at *2.

[70] No. 10-633-1, 2020 WL 4674126, at *6-7 (E.D. Pa. Aug. 12, 2020).

[71] *Id.* at *7. We are also mindful of Judge Robreno's decision denying compassionate release on the basis of a stacked sentence under section 924(c) and its present appeal. *See United States v. Andrews*, No. 05-280-2, *appeal docketed*, No. 20-2768 (3d Cir. Sept. 4, 2020).

[72] *United States v. McCoy*, 981 F.3d 271, 280-88 (4th Cir. 2020).

[73] *Id.* at 288.

[74] *Clausen*, 2020 WL 4260795 at *8 (citing *Rodriguez*, 2020 WL 1627331, at *11 (quoting U.S.S.G. § 1B1.13(2)).

[75] *Id.*

[76] *Id.* (citing 18 U.S.C. § 3142(g)(1)–(4)).

[77] *United States v. Moore*, No. 14-209-2, 2020 WL 7024245, at *6-7 (E.D. Pa. Nov. 30, 2020).

[78] *Id.*

[79] *Wilson*, 960 F.3d at 151-52.

[80] *See United States v. Wilson*, Nos. 19-122-2, 19-123-1, 2020 WL 7640940, at *3 (E.D. Pa. Dec. 23, 2020) (denying compassionate release where petitioner served nineteen months of his seventy-eight-month sentence and "[r]eleasing [petitioner] now would not appropriately reflect the nature and circumstances of his offenses, promote just punishment, or afford adequate deterrence to criminal conduct"); *United States v. Young*, No. 06-710-02, 2020 WL 4925592, at *3-4 (E.D. Pa. Aug. 21, 2020) ("[W]here the defendant has a history of recidivating and has not served a large portion of his sentence, the § 3553(a) factors do not warrant compassionate release.").