**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 14-209-1, 2** |
| | : | |
| **MARQUIS WILSON, *et al.*** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                    **September 30, 2021**

 Marquis Wilson and Malcolm Moore planned and robbed two Wells Fargo banks. Mr. Moore carried a gun into the banks. The Honorable Legrome D. Davis held a jury trial resulting in the jury's findings of guilt for conspiracy to commit armed bank robbery, armed bank robbery, and using or carrying a firearm during a crime of violence.  We studied and denied their post-trial motions after Judge Davis retired and the Chief Judge reassigned this case to us.  We sentenced the two men entirely consistent with Congress's mandate.  Messrs. Moore and Wilson timely appealed. Our Court of Appeals affirmed the jury verdicts and our sentences. They now seek habeas relief raising claims not exhausted in the Court of Appeals but also raise claims converting earlier appellate arguments into claims of ineffective assistance by their trial lawyers. We studied the record on all claims including their concerns with an allegedly duplicitous indictment based on roles as principal, conspirator, or aiding and abetting along with erroneous jury instructions and verdict sheet. After careful review of the indictment and challenges to Judge Davis's instructions and verdict slip, we find no basis to grant habeas relief based on ineffective assistance of counsel or other bases to grant habeas on the procedurally defaulted and meritless claims. We find no basis for a certificate of appealability. We deny Messrs. Wilson's and Moore's petitions for habeas relief.

## I.        Facts

The grand jury charged Marquis Wilson, Malcolm Moore, Calia Kane, and Martril Foster with conspiracy to commit armed bank robbery; two counts of armed bank robbery and aiding and abetting armed bank robbery; and two counts of using, carrying, and brandishing a firearm in furtherance of the bank robberies and aiding and abetting the same.[1]   Ms. Kane and Mr. Foster plead guilty; Messrs. Wilson and Moore stood trial before Judge Davis.

***The United States adduces evidence Messrs. Wilson and Moore committed two bank robberies.***

The United States adduced trial evidence Messrs. Wilson and Moore robbed two Wells Fargo Bank branches.[2]   They first plotted to rob a Wells Fargo in Bala Cynwyd in November 2013.[3]   They agreed Mr. Moore would bring a gun into the bank.[4]   Ms. Kane, a bank employee, informed her co-conspirators when they should enter by a text message.[5]   Mr. Moore entered first with a gun.[6]   Mr. Wilson entered next with a duffle bag.[7]   Mr. Foster entered last, locked the door, and stood watch to ensure no one entered or left the bank.[8]   Messrs. Wilson and Moore vaulted the counter.[9]   They demanded money from the bank employees.[10]   They stole approximately $80,000.[11]   Trial testimony confirms the three robbers used only one gun.[12]   The jury watched video footage of the robbery.[13]

The three robbers fled.[14]   A North Carolina police officer stopped them days later and confiscated the stolen funds.[15]   The officer did not arrest them.[16]   The robbers returned to Philadelphia and planned to rob a second Wells Fargo in Phoenixville in November 2013.[17]   They planned like their first robbery, and Mr. Moore again handled the only gun.[18]   The robbers stole approximately $70,000.[19]   The jury watched video footage of the robbery.[20]

***The parties stipulate to evidence regarding Wells Fargo's FDIC insurance.***

Counsel stipulated in the jury's presence Adrianne Bailey, who works for Wells Fargo's loss prevention unit, would testify the Federal Deposit Insurance Commission insured both Wells

Fargo locations during both robberies.[21]  The parties also stipulated to the admission of a certificate

supporting the FDIC insurance.[22]

The stipulation read:

MR. ASTOLFI [for the United States]: Your Honor, if called to testify, [Adrianne] Bailey, who is with Wells Fargo Bank in the loss prevention unit . . . would testify that at the time of the robbery on November 4, 2013, Wells Fargo Bank was, in fact, insured by the FDIC.  Government Exhibit 1, the FDIC certificate, is admissible to support that testimony.

THE COURT: So you'd agree to the admissibility of G-1 and the fact that the bank was FDIC-insured on November 4th; is that correct, folks?

MR. CHESTNUT [for Mr. Moore]: Yes.

MS. LIN [for Mr. Wilson]: Yes, Your Honor.

THE COURT: All right.

[. . .]

THE COURT: Go ahead, sir.

MR. ASTOLFI: And that the FDIC certificate, Government Exhibit 1, covers the entire Wells Fargo Bank, all the bank branches, not just the one in Bala Cynwyd, and it was also effective on November 12, 2013[, the date of the Phoenixville robbery].

THE COURT: So stipulated?

MS. LIN: So stipulated.

MR. CHESTNUT: So stipulated.

THE COURT: Very well.

MR. ASTOLFI: That's it.[23]

*Judge Davis instructs the jury.*

Judge Davis instructed the jury their verdict had "to be unanimous."[24]  He said the verdict "would have to be 12 to nothing on the particular count, because if the vote is something other than 12 to nothing, that's not a valid verdict."[25]

Judge Davis also instructed while Messrs. Wilson and Moore stood trial together, "each defendant is entitled to a separate, independent judgment on the five charges against them."[26]  He told the jury it should "evaluate[] separately" the five counts against each defendant.[27]

 Judge Davis instructed on three theories of liability: principal liability, "where you're responsible for what you do personally"; "conspiracy liability, where you are responsible for what your partners, under certain circumstances, do"; and "accomplice liability," where the defendant is responsible "for the conduct of another if he or she is an accomplice."[28]  Judge Davis explained the elements of principal, conspiracy, and accomplice liability.[29]  He instructed the jury could find conspirators and accomplices responsible for the conduct of others.[30]  He thought accomplice liability "relates to the weapons offense, but it's your judgment about what, if anything, it relates to."[31]  Judge Davis instructed the jury, "[A]s I understand the government's case, this applies principally to the weapons offense."[32]

Judge Davis instructed on the weapons offense.  He said the jury needed to find Messrs. Wilson and Moore "use[d] or carrie[d]" a firearm to convict on counts three and five.[33]  He defined "uses or carries a firearm" as "having a firearm available on a person to assist or aid in the commission of the armed bank robbery."[34]  He continued: "'[U]se' means more than just merely possessing it. . . . 'Use' means, under the law, that the government has to show that the weapon was actively employed by the defendant or a coconspirator."[35]  Judge Davis explained how accomplice liability applies to the weapons offense: "[T]he aider and abettor, the person not

carrying the firearm, [needed to have] advance knowledge . . . that the confederate would carry or use the firearm during that particular offense."[36]

### *The verdict sheet included a special interrogatory on "brandishing."*

Judge Davis and the lawyers "ha[d] a couple of last-minute changes [to the verdict sheet] so that it really reflects the way that this case has been tried."[37]  Judge Davis informed the jury if it found either defendant guilty of "any weapons offense, you will be asked to answer a question called a jury interrogatory."[38]  He read the interrogatory to the jury: "Do you unanimously find that the government proved beyond a reasonable doubt that whatever defendant (or his conspirator or accomplice) brandished a firearm when committing this offense?"[39]  The verdict sheet contained substantially the same questions for each defendant in counts three and five.[40]  The verdict sheet did not contain the "(or his conspirator or accomplice)" clause in any of its other counts.[41]  The trial transcript shows Judge Davis discussed this interrogatory with Messrs. Wilson and Moore's trial counsel, but the discussion is not transcribed.[42]

Judge Davis defined "brandish" as "with respect to a firearm, to display all of part of the firearm or otherwise make the presence of the firearm known to another person in order to intimidate that person, regardless of whether the firearm is directly visible to the person."[43]

### *The jury finds Messrs. Wilson and Moore guilty of all counts.*

The jury found Messrs. Wilson and Moore guilty of all five counts: one count of conspiracy to commit armed bank robbery (count one); two counts of armed bank robbery (counts two and four); and two counts using or carrying a firearm during a crime of violence (counts three and five).[44]  The jury also checked "Yes" to both interrogatories asking whether the defendants brandished the firearm.[45]

***Messrs. Wilson and Moore seek post-trial relief.***

Messrs. Wilson and Moore moved for acquittal and a new trial.[46]  Mr. Wilson argued the United States adduced insufficient evidence he used an actual firearm in the offense.[47]  Mr. Moore argued the United States adduced insufficient evidence of conspiracy and armed bank robbery, insufficient evidence Mr. Moore used a firearm during the bank robbery, and Mr. Wilson's admission during opening statements he engaged in the robberies prejudiced Mr. Moore.[48]  Mr. Moore also argued the United States failed to prove an essential element of bank robbery by failing to prove the FDIC insured the banks and his trial counsel was ineffective for stipulating to the FDIC element.[49]  Messrs. Wilson and Moore joined each other's motions.[50]

We held a hearing on the parties' post-trial motions.[51]  A bank's FDIC insurance gives us jurisdiction.[52]  We questioned the United States and Messrs. Wilson and Moore's post-trial counsel on whether the stipulation regarding FDIC insurance created sufficient evidence to convict Messrs. Wilson and Moore.[53]  We asked Mr. Moore's counsel whether Ms. Bailey's testimony alone would establish FDIC insurance.  Counsel responded it would not because Ms. Bailey would be subject to cross examination regarding her foundation for the testimony, and she may lack foundation for her testimony because she worked in the loss prevention unit, not the insurance unit.[54]  Mr. Moore also argued his trial counsel and the United States failed to conduct discovery regarding Ms. Bailey's potential testimony because the United States had not interviewed the witness before trial.[55]

Counsel for the United States argued "the stipulation was specific enough to say this certificate covers these banks and all the branches of Wells Fargo and that it was in effect on the dates of the robberies."[56]  The United States further argued without the stipulation, it would have called a witness to testify regarding FDIC insurance or moved to self-authenticate the certificate.[57]

The United States noted "[t]he real issue" is whether "counsel [was] prudent in stipulating based on the information they had."[58]  We informed the parties at the beginning of the hearing, however, we would not determine the ineffective assistance of counsel issue if and until Messrs. Wilson and/or Moore sought habeas relief.[59]

We denied Messrs. Wilson and Moore's post-trial motions, finding the stipulation—coupled with the proffered testimony and certificate—sufficed to show the FDIC insured the banks' deposits.[60]

### *We sentence Mr. Wilson.*

We sentenced Mr. Wilson to 519 months' imprisonment and two years of supervised release.[61] Mr. Wilson's 519-month sentence comprised sixty months running concurrently for counts one, two, and four; 159 months for count three running consecutively to the sixty-month term; and 300 months for count five running consecutively to the first two terms.[62]

We sentenced Mr. Wilson under the Armed Career Criminal Act because he, his conspirators, or his accomplices used or carried, and brandished, a firearm in furtherance of the bank robberies.[63] Congress mandated a sentence of at least seven years (eighty-four months) for count three because Mr. Wilson (or his conspirator or accomplice) brandished a firearm.[64]  We imposed a greater sentence for count three than the seven-year minimum term Congress required after considering the sentencing factors in section 3553(a).  We found Mr. Wilson to be a "leader" of the conspiracy because he primarily plotted the robberies,[65] he committed a "very serious" offense,[66] and he displayed "ultimate disrespect for the law and other people's lives."[67]  Congress mandated a sentence of at least twenty-five years for count five under the Act's "stacking" provision because Mr. Wilson had received multiple convictions under the Act.[68]

***We sentence Mr. Moore.***

We sentenced Mr. Moore to 385 months' imprisonment and two years of supervised release.[69]  Mr. Moore's 385-month sentence comprised one month as to counts one, two, and four; eighty-four months for count three running consecutively to the one-month term; and 300 months for count five running consecutively to the first two terms.[70]  We sentenced Mr. Moore under the Act; the same mandatory minimums for counts three and five which applied to Mr. Wilson applied to Mr. Moore.[71]  We sentenced Mr. Moore to the mandatory seven-year sentence for count three, unlike the 159-month sentence we issued to Mr. Wilson for the same charge, because we granted Mr. Moore's request for a downward departure.[72]

***Messrs. Wilson and Moore appeal their convictions and sentences.***

Messrs. Wilson and Moore appealed.[73]  They raised five appellate issues: (1) whether Judge Davis should have granted their motion to suppress evidence collected during an impermissibly long routine traffic stop; (2) whether Judge Davis's admission of cell site location information violated the Fourth Amendment; (3) whether trial counsel's stipulation regarding FDIC insurance violated their right to counsel; (4) whether the convictions under section 924(c) were illegal because "conspiracy to commit armed bank robbery is [not] a crime of violence"; and (5) whether Mr. Wilson's 519-month sentence is substantively unreasonable considering the sentencing factors in 18 U.S.C. § 3553(a)(2).[74]  Our Court of Appeals also directed the parties to brief whether the First Step Act—which modified certain sentences under section 924(c)— retroactively applied to Messrs. Wilson and Moore's sentences.[75]  Our Court of Appeals affirmed our judgment.[76]

## II.   Analysis

Messrs. Wilson and Moore now seek habeas relief. [77]   They bring four grounds of ineffective assistance of trial counsel for: (1) failing to argue their indictment and verdict sheet were duplicitous; (2) stipulating to evidence regarding FDIC testimony; (3) failing to argue the indictment is multiplicitous; and— Mr. Moore alone argues—(4) failing to seek a severance "due to the prejudicial spillover effect caused by codefendant's counsel['s] surprise admission of his client's guilt in a[n] opening statement."[78]   They also raise eight non-ineffective assistance of counsel grounds: (1) counts three and five of the indictment were duplicitous; (2) the indictment failed to charge offenses in counts three and five; (3) they are actually innocent of counts three and five; (4) the jury instructions constructively amended the indictment; (5) insufficient evidence supported convictions on counts two and four; (6) petitioners' sentences are illegal because the indictment did not charge them with brandishing a firearm; (7) we lacked jurisdiction on counts two and four because FDIC insurance does not permit our jurisdiction; and (8) the sentences were illegally "stacked," violating the First Step Act.[79]

Federal prisoners may seek habeas relief arguing we imposed a sentence "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[80]

We deny Messrs. Wilson and Moore's petition.   They fail to show their counsel rendered ineffective assistance prejudicing them.   Their remaining arguments are procedurally defaulted and meritless even if properly raised.   We decline to hold a hearing as there are no disputed material facts and the record conclusively shows Messrs. Wilson and Moore are not entitled to relief.   We decline to issue a certificate of appealability.

A. **We deny Messrs. Wilson and Moore's ineffective assistance of counsel claims.**

Messrs. Wilson and Moore argue their trial counsel provided ineffective assistance by (1) failing to challenge counts three and five of their indictment and verdict sheet as duplicitous; (2) stipulating to testimony regarding the banks' FDIC insurance and the admissibility of a certificate of insurance; (3) failing to challenge the indictment as multiplicitous because counts two through five were also charged in count one; and (4) failing to move to sever the trial.[81]  The United States responds (1) our grand jury did not issue a duplicitous indictment, so trial counsel did not err by failing to challenge it; (2) counsel reasonably stipulated to evidence of FDIC insurance; (3) our grand jury did not issue a multiplicitous indictment, so trial counsel did not err by failing to challenge it; and (4) our Court of Appeals already decided Mr. Moore suffered no prejudice from a non-severed trial.[82]

Messrs. Wilson and Moore must show "counsel's representation fell below an objective standard of reasonableness; and . . . there is a reasonable probability that, but for counsel's error, the result would have been different."[83]  We apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."[84]  To show prejudice, a petitioner must show "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[85]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[86]

We deny Messrs. Wilson and Moore's ineffective assistance of counsel claims.  First, the indictment and verdict sheet were not duplicitous and did not prejudice Messrs. Wilson and Moore.  Second, counsel reasonably stipulated to evidence of FDIC insurance and did not prejudice Messrs.

Wilson and Moore.  Third, the indictment was not multiplicitous.  Fourth, our Court of Appeals already decided Mr. Moore suffered no prejudice from a non-severed trial.

> **1.    Counsel did not err by failing to challenge the indictment for duplicity.**

Messrs. Wilson and Moore argue their counsel erred by failing to object to a duplicitous indictment and verdict sheet, which charged principal liability for using, carrying, and brandishing a firearm, and accomplice liability for aiding and abetting the use, carrying, and brandishing of a firearm in the same counts (counts three and five).[87]  The United States responds our grand jury did not issue a duplicitous indictment, so counsel cannot have erred by failing to challenge it.[88]  We find the indictment and verdict sheet neither duplicitous nor prejudicial.

"Duplicity is the joining of two or more distinct offenses in a single count, so that a general verdict does not reveal exactly which crimes the jury found the defendant had committed."[89]  Our Court of Appeals flagged five vices of duplicity: "(1) avoiding doubt that a general verdict may mask a finding of guilt as to one crime but not another; (2) avoiding risk that the jury was not unanimous as to any one of the crimes charged; (3) providing the defendant adequate notice; (4) supplying an adequate basis for sentencing; and (5) protecting against double jeopardy."[90] "An indictment and resulting verdict form are impermissibly duplicitous and subject to dismissal only when the policy concerns identified by the Circuit are implicated."[91]  To dismiss an indictment for duplicity, defendants "must establish both [1] impermissible duplicity and [2] prejudice flowing from therefrom."[92]

Neither the indictment nor verdict sheet are duplicitous because they merely charge different theories of liability in the same count, not different offenses in the same count.  The indictment and verdict sheet are not prejudicial.

a.      **The indictment and verdict sheet are not duplicitous.**

We first must determine whether the indictment and verdict sheet are duplicitous. "A duplicitous count is one that charges more than one distinct and separate offense."[93] "The line between multiple offenses and multiple means to the commission of a single continuing offense is often a difficult one to draw."[94] An indictment is generally duplicitous if it "charg[es] in one count what could be several independent charges."[95]

The United States charged Messrs. Wilson and Moore both as principals and accomplices in counts two through five of the indictment. Judge Davis's jury instructions also permitted the jury to find guilt through conspiracy liability for counts two through five. And the verdict sheet's interrogatory permitted the jury to find Messrs. Wilson and Moore guilty of brandishing a firearm as principals, accomplices, or conspirators. We must determine whether the indictment's and verdict sheet's failure to distinguish these theories of liability rendered them duplicitous.

A jury may find a defendant guilty of the same offense through principal liability, accomplice liability, and/or conspiracy liability.[96] Principal liability requires a defendant to commit the elements of an offense. Accomplice liability bars "aid[ing] and abet[ting]" offenses against the United States.[97] One aids and abets an offense—becoming an accomplice—if they "(1) take[] an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission."[98] To aid and abet violations of the Armed Career Criminal Act, "the aider-and-abettor [must have] advance knowledge that a gun would be employed and decide[] thereafter to join or continue the underlying offense."[99] The United States may also prove an offense through conspiracy liability. "To support a conspiracy conviction, the government must show both an agreement and a specific intent to achieve some unlawful goal."[100] "A defendant is liable for substantive offenses committed by co-conspirators . . . if (1) the defendant is a party to a

12

criminal conspiracy, (2) one or more co-conspirators committed the substantive offense in furtherance of the conspiracy, and (3) commission of the substantive offense was reasonably foreseeable."[101]

We find the indictment and verdict sheet are not duplicitous because they do not charge separate **offenses** in the same count; they merely charge separate **means** of committing one offense. Whether the jury convicted Messrs. Wilson and Moore as principals, accomplices, or conspirators, they are still liable for the same Act offenses. Judges regularly find charging multiple theories of liability for the same offense in the same count is not duplicitous.[102] The Court of Appeals for the Ninth Circuit confirms "aiding and abetting is embedded in every federal indictment for a substantive crime."[103]

We also address cases appearing to find charging separate theories of liability in the same count renders duplicity.[104] But these cases handle Hobbs Act robberies, and our Court of Appeals has held the Hobbs Act enumerates conspiracy as a separate offense.[105] Messrs. Wilson and Moore's charges of armed bank robbery and using, carrying, and brandishing a firearm do not enumerate separate offenses for aiding and abetting or conspiracy. The indictment and verdict sheet are not duplicitous.[106]

We recognize, however, the verdict could create confusion absent context. The interrogatory specifically allows the jury to find Messrs. Wilson and Moore "or [their] conspirator or accomplice" guilty of brandishing the firearm. But the verdict sheet did not contain the "conspirator or accomplice" clause for the other charges in counts two through five—even though Judge Davis instructed the jury regarding accomplice and conspirator theories for those counts. Trial evidence confirmed only one man used or carried, and brandished, one gun, meaning the jury

had to use different theories of liability to convict both Messrs. Wilson and Moore. We need to analyze the prejudice prong because of the potential confusion.

      **b.**      **Messrs. Wilson and Moore fail to show resulting prejudice.**

Messrs. Wilson and Moore argue they are prejudiced due to the lack of a unanimous verdict. The United States simply argues the indictment and verdict sheet are not duplicitous. We find no prejudice.

We are persuaded by reasoning from other judges in similar circumstances. In *United States v. Bonner*, the grand jury charged defendant with "a completed offense, attempt to commit an offense, and conspiracy to commit an offense" under the Hobbs Act in one count.[107] The verdict sheet asked whether defendant "committed, attempted to commit, or aided and abetted the commission of Hobbs Act robberies" in the same count.[108] Chief Judge Conner found the indictment "arguably" duplicitous, but found no prejudice.[109] He reasoned the court instructed the jury it could find defendants guilty of either attempt or principal liability, but the court "expressly admonished the jury that it may only find [defendant] guilty of a particular offense if its verdict was completely unanimous."[110] Chief Judge Conner also reasoned the jury heard "abundant[,]" "unequivocal[]" evidence of defendant's guilt at trial.[111]

Judge Fitzwater in the Northern District of Texas applied similar reasoning in *United States v. Brown*.[112] Judge Fitzwater handled a potentially duplicitous indictment charging accomplice liability and principal liability for Armed Career Criminal Act violations in the same count.[113] Judge Fitzwater found no prejudice because the United States proposed jury instructions to consider separately whether defendants discharged a firearm, brandished a firearm, or simply used or carried a firearm—all either as principals or accomplices.[114] Judge Fitzwater found the

proposed jury instructions and verdict sheet eliminated the potential for jury confusion and ensured a unanimous verdict, eliminating two vices associated with duplicity.[115]

We find this reasoning persuasive and our Court of Appeals' policy concerns are not implicated. Judge Davis's jury instructions eliminate the first two policy concerns our Court of Appeals identified: "(1) avoiding doubt that a general verdict may mask a finding of guilt as to one crime but not another;" and "(2) avoiding risk that the jury was not unanimous as to any one of the crimes charged."[116] As in *Bonner*, Judge Davis thoroughly explained and distinguished the three theories of liability. He admonished the jury it must return a unanimous verdict. Judge Davis's thorough instructions extinguished doubt the jury failed to return a unanimous verdict on at least one of the three theories of liability. Theories of liability are not separate crimes, but rather "zones on a continuum of awareness, all of which support criminal liability."[117] Judges regularly find such verdicts extinguish prejudice duplicity causes.[118]

Messrs. Wilson and Moore also received adequate notice of the charges against them, eliminating our Court of Appeals' third concern.[119] The indictment charged Messrs. Wilson and Moore as principals, conspirators, and accomplices. They stood trial jointly. The United States adduced ample evidence regarding their conspiracy. They joined in each other's motions throughout this litigation, including today. Messrs. Wilson and Moore suffered no prejudice by jointly defending all theories of liability.

Our Court of Appeals' fourth concern—whether the verdict supplies an adequate basis for sentencing—is not implicated.[120] The United States charged Messrs. Wilson and Moore with violating the Armed Career Criminal Act. Congress prohibits using or carrying a firearm "during and in relation to any crime of violence" through the Act.[121] We must sentence defendants who violate the Act to at least five years' imprisonment.[122] We must sentence defendants who

"brandish[]" a firearm during and in relation to a crime of violence to at least seven years' imprisonment.[123] We must sentence as principals whether the jury found Messrs. Wilson and Moore guilty as principals, accomplices, or conspirators. We sentenced Mr. Wilson to the upper limit of his guideline range, 519 months. We sentenced him on count three to 159 months—well above the seven-year (eighty-four-month) mandatory minimum for brandishing a firearm. We sentenced him by considering other detailed factors, such as his leadership role in the conspiracy. We would have sentenced Mr. Wilson the same regardless of which theory the jury used to convict him of this offense. We sentenced Mr. Moore to the seven-year (eighty-four-month) mandatory minimum. We would have sentenced Mr. Moore to the same mandatory minimum sentence regardless of which theory the jury used to convict him.

Messrs. Wilson and Moore also face no risk of double jeopardy. The facts do not run afoul of our Court of Appeals' final concern.[124] The Constitution's Double Jeopardy Clause "protect[s] against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense."[125] Jeopardy attaches "when the jury is empaneled and sworn."[126] The Double Jeopardy Clause bars re-prosecution if "jeopardy end[s] in such a manner that the defendant may not be retried."[127] Guilt is such a manner.[128] Messrs. Wilson and Moore's jeopardy ended in guilty verdicts on all charged offenses. They cannot again stand trial for those offenses under any theory of liability.[129] Double jeopardy is not a concern.

Messrs. Wilson and Moore's trial counsel did not render ineffective assistance by failing to object to a non-duplicitous indictment and verdict sheet which did not prejudice Messrs. Wilson and Moore.[130]

### 2. Counsel was not ineffective for stipulating to Wells Fargo's FDIC insurance.

Messrs. Wilson and Moore argue their counsel was ineffective by stipulating to evidence the FDIC insured the banks without their consent and without first investigating their FDIC insurance.[131] The United States responds Messrs. Wilson and Moore have not shown their counsel failed to investigate whether FDIC insured the Wells Fargo branches, counsel entered into the stipulation on an open record in front of Messrs. Wilson and Moore, and counsel had no need to consult with Messrs. Wilson and Moore regarding the stipulation.[132] Messrs. Wilson and Moore reply the United States would not have established FDIC insurance at trial without the stipulation because the FDIC certificate was fraudulent and Ms. Bailey had no foundation for her testimony, citing the United States' argument at our hearing on their post-trial motions.[133] They also reply the stipulation deprived them of their right to confront witnesses under the Sixth Amendment's Confrontation Clause.[134] We agree with the United States.

The United States charged Messrs. Wilson and Moore with bank robbery under 18 U.S.C. § 2113(d).[135] Congress defines "bank" to include "any institution the deposits of which are insured by the Federal Deposit Insurance Corporation."[136] The United States had to prove beyond a reasonable doubt the FDIC insured the Wells Fargo branches as "both an element of the offense and a jurisdictional prerequisite."[137]

We found the United States adduced sufficient evidence the FDIC insured the banks.[138] We found the parties' stipulation constituted evidence Ms. Bailey would have testified the FDIC insured the banks and the certificate insured all Wells Fargo branches.[139] The United States would have proven the FDIC insurance with Ms. Bailey's testimony without the stipulation.[140] We declined to decide whether trial counsel rendered ineffective assistance by stipulating without

"receiving certain discovery materials."[141]   We further declined to address whether counsels' stipulation to the element without their clients' consent constituted ineffective assistance.[142]

Our Court of Appeals then analyzed whether Messrs. Wilson and Moore's counsels' stipulation to evidence of FDIC insurance constituted a structural violation of their Sixth Amendment right to autonomy.[143]   Our Court of Appeals found no violation, concluding "whether to contest or concede a jurisdictional element is a tactical decision reserved for counsel, not defendants."[144]   The Court "express[ed] no view about whether counsel's decision . . . met *Strickland*'s two-part test for effective assistance of counsel."[145]

We now address the question and find counsel reasonably stipulated to evidence regarding Wells Fargo's FDIC insurance.  Even without trial counsels' stipulation evidently reached without discovery or Messrs. Wilson and Moore's consent, the United States would have met its burden proving Wells Fargo maintains FDIC insurance.

We find no objective error in counsels' tactical decision to stipulate to an element which could not "be seriously contested."[146]  Without the stipulation, the United States would have adduced testimony and a certificate regarding the FDIC insurance.  This evidence suffices to prove FDIC insurance.  Counsel stipulated to the evidence and reasonably contested the elements it thought the United States might fail to prove.[147]  Courts frequently reject ineffective assistance of counsel claims based on counsels' stipulation to FDIC insurance in bank robbery prosecutions.[148]

We acknowledge courts of appeals have ordered new trials on armed bank robbery convictions because the United States failed to adduce sufficient evidence of FDIC insurance.[149]  The Court of Appeals for the Fifth Circuit, for example, "has admonished the government to exercise care in satisfying its burden of proving the financial-institution element in prosecuting bank fraud and other bank-related offenses, lest it suffer a reversed conviction on a seeming

technicality."[150]  But these decisions do not bind us.  Our Court of Appeals—albeit in unpublished decisions—has found "testimony of officers" from banks plus FDIC certificates suffice to prove FDIC insurance.[151]  Our Court of Appeals' decisions are in accord with many judges.[152]

Messrs. Wilson and Moore frequently cite the United States' arguments during our hearing on the post-trial motions as evidence the United States could not have proven the Wells Fargo's FDIC insurance without the stipulation.  We disagree.  The United States did not admit it needed the stipulation to prove FDIC insurance.  It argued—in the context of whether it had adduced sufficient evidence of FDIC insurance—the stipulation constituted sufficient evidence.  We specifically asked counsel what would result had the parties not stipulated.  The United States responded it would have introduced Ms. Bailey's testimony and sought to authenticate the certificate.  We advised the parties we would not then decide ineffective assistance of counsel claims, so the United States appropriately focused its argument on sufficiency of the evidence. The United States did not argue the stipulation cured evidentiary infirmities.

Messrs. Wilson and Moore argue their counsel failed to investigate whether the FDIC insured the banks.  But—even assuming counsel failed to conduct discovery regarding FDIC insurance—we find no objective error because counsel's decision to "focus instead on the disputed elements of the case" constitutes "sound trial strategy."[153] Messrs. Wilson and Moore further argue their counsel stipulated without their consent, rendering ineffective assistance.  But our Court of Appeals foreclosed this argument by finding "whether to contest or concede a jurisdictional element is a tactical decision reserved for counsel, not defendants."[154]  Our Court of Appeals deferred the ineffective assistance question, but we still apply our Court of Appeals' reasoning to resolve the ineffective assistance argument against Messrs. Wilson and Moore.

Even if counsel performed deficiently by stipulating without consulting Messrs. Wilson and Moore, this decision would not have prejudiced them.  They adduce no evidence the United States would have failed to establish the banks' FDIC insurance without the stipulation.  And Messrs. Wilson and Moore introduce no evidence the FDIC did not insure Wells Fargo.  They submit correspondence from FDIC officials purporting to show Wells Fargo is "under the direct supervision of the Bureau of Consumer Financial Protection" and the FDIC does not insure against robbery.[155]  But this hearsay correspondence does not address whether the FDIC insures the Wells Fargo banks.  Messrs. Wilson and Moore "merely wish that [their] counsel had forced the government to prove" the FDIC insurance, which is inadequate to show ineffective assistance.[156]

Messrs. Wilson and Moore argue counsel's stipulation to FDIC insurance requires we vacate their convictions because it violated their right to confront witnesses under the Confrontation Clause.  We disagree.  The Confrontation Clause "protect[s] defendants from testimonial hearsay" being used against them if they have not had the opportunity to cross-examine the declarant.[157]  Statements are testimonial if their "primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution."[158]  A Confrontation Clause violation warrants reversal only if the defendant shows the proceeding would have had a different result without the violation.[159]  The absence of Ms. Bailey's testimony engendered by counsel's stipulation arguably violated the Confrontation Clause, as Messrs. Wilson and Moore never cross-examined Ms. Bailey and her statement is likely testimonial because it related to an element of bank robbery.[160]  But the potential violation does not prejudice Messrs. Wilson and Moore.  Ms. Bailey's testimony and the FDIC insurance certificate would have established the Wells Fargo's FDIC insurance without counsel's stipulation.  Messrs. Wilson and Moore offer "no basis other than [their] hearsay argument to require live witnesses in place of the written records" and Ms.

Bailey's stipulated-to testimony.[161] Messrs. Wilson and Moore fail to show the result of their trial may have changed without the stipulation.   Challenges based on the Confrontation Clause regarding admission of FDIC evidence lack merit.[162]

Messrs. Wilson and Moore fail to rebut the "strong presumption" their counsel performed adequately.[163]   We find counsel did not render ineffective assistance by stipulating to FDIC insurance and the stipulation did not cause prejudice.

### 3.    Counsel was not ineffective for failing to challenge the indictment as multiplicitous.

Messrs. Wilson and Moore next argue counsel failed to challenge counts two through five of the indictment as multiplicitous of the first count because counts two through five incorporate paragraphs charging conspiracy from count one.[164]   The United States responds count one permissibly charged conspiracy and counts two through five permissibly charged the underlying offenses which defendants conspired to commit.[165]  Messrs. Wilson and Moore reply counts two through five incorporated paragraphs from count one which referenced the conspiracy, recharging conspiracy.  We agree with the United States.

"Multiplicity is the charging of a single offense in separate counts of an indictment."[166]  "A multiplicitous indictment risks subjecting a defendant to multiple sentences for the same offense, an obvious violation of the Double Jeopardy Clause's protection against cumulative punishment."[167]  To determine whether an indictment is multiplicitous, we must decide "whether each provision requires proof of an additional fact which the other does not."[168]

We find counsel was not ineffective for failing to challenge multiplicity because the indictment is not multiplicitous.  Count one charges a single conspiracy to rob two banks on different dates under 18 U.S.C. § 371.[169]  Counts two and four charge armed bank robbery and aiding and abetting armed bank robbery for two separate robberies under 18 U.S.C. §§ 2 and

2113(d).  Counts three and five charge using, carrying, and brandishing a firearm and aiding and abetting the same for two separate robberies under 18 U.S.C. § 924(c).  The five counts charge different offenses.  Counts two and three incorporate only the overt acts related to the Bala Cynwyd robbery, while counts four and five incorporate only overt acts related to the Phoenixville robbery.[170]  They are not multiplicitous.

Messrs. Wilson and Moore argue counts two through five err by incorporating paragraph four of count one to re-charge conspiracy.  We disagree.  Paragraph four of count one reads: "It was part of the conspiracy that defendants . . . committed an armed robbery of the Wells Fargo Bank [in Bala Cynwyd]."[171]  The incorporation of this paragraph's mere mention of conspiracy does not suffice to recharge Messrs. Wilson and Moore with conspiracy to commit armed robbery four times.[172]  Even if it did, the verdict sheet remedied this error by only charging conspiracy to commit bank robbery in count one.  Counsel did not err by failing to challenge the indictment as multiplicitous.

### 4.   Mr. Moore fails to show counsel erred by not moving for severance.

Mr. Moore argues in an "amended" petition counsel erred by failing to seek severance of trial due to Mr. Wilson's counsel's "surprise admission" in an opening statement Mr. Wilson played a role in the robberies.[173]  The United States argues Mr. Moore's argument rehashes his previous argument in an ineffective assistance of counsel context.[174]

We agree with the United States.  Mr. Moore's claim counsel erred by failing to move to sever fails because we already found Mr. Moore suffered no prejudice from Mr. Wilson's counsel's opening statement.[175]  We found Mr. Wilson's counsel did not suggest Mr. Moore's guilt in her opening statement.[176]  Even if she had, Judge Davis appropriately instructed the jury to dispel any prejudice.[177]  Our Court of Appeals also found Mr. Moore failed to show he faced an

unfair trial from non-severance.[178]  Mr. Moore fails to persuade us to change our previous findings as to prejudice by casting his argument in an ineffective assistance of counsel context.  We reject Messrs. Wilson and Moore's ineffective assistance of counsel claims.

**B.   We deny Messrs. Wilson and Moore's remaining claims as procedurally defaulted and otherwise lacking merit.**

The United States argues Messrs. Wilson and Moore's remaining claims are procedurally defaulted because Messrs. Wilson and Moore failed to raise them on direct review.[179]  Messrs. Wilson and Moore respond they argue due process claims, so their claims are not procedurally defaulted.  We agree with the United States and find Messrs. Wilson and Moore's claims procedurally defaulted.

The "procedural-default rule" provides "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice."[180]  Cause exists upon "a showing that the factual or legal basis for a claim was not reasonably available to counsel."[181]  Neither Congress nor the Constitution mandates the rule; rather, "it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments."[182]

We find Messrs. Wilson and Moore procedurally defaulted their remaining claims: (1) counts three and five of the indictment were duplicitous; (2) the indictment failed to charge offenses in counts three and five; (3) they are actually innocent[183] of counts three and five; (4) the jury instructions constructively amended the indictment; (5) insufficient evidence supported convictions on counts two and four; (6) petitioners' sentences are illegal because the indictment did not charge them with brandishing a firearm; (7) we lacked jurisdiction on counts two and four because FDIC insurance does not permit our jurisdiction; and (8) defendants' sentences were illegally "stacked" in violation of the First Step Act.  All but one of these issues differ from the

issues Messrs. Wilson and Moore's appealed.[184]  The only appealed issue is whether the First Step Act should modify their sentence.  But our Court of Appeals already decided the First Step Act issue, and Messrs. Wilson and Moore cannot now re-litigate it.[185]

Messrs. Wilson and Moore fail to show cause and prejudice requiring us to consider these claims.  They appear to concede they failed to appeal these issues.[186]  Messrs. Wilson and Moore used the form section 2255 petition—which requires they disclose whether they previously raised claims—for their ineffective assistance claims, but failed to use it for their remaining claims.  They do not tell us whether they previously raised their remaining claims.  Our review confirms they did not.  Messrs. Wilson and Moore argue we should consider their claims because their "allegations are based on Due Process violations[] and statutory violations that affect the subject matter jurisdiction of the court."[187]  This is the standard for cognizability of section 2255 petitions.[188]  But Messrs. Wilson and Moore fail to explain why they did not raise these arguments on direct review.  Messrs. Wilson and Moore procedurally defaulted their remaining claims.

Even if Messrs. Wilson and Moore had exhausted their remaining claims, we would deny them on their merits.

### 1. We reject Messrs. Wilson and Moore's argument the indictment and verdict sheet were duplicitous.

Messrs. Wilson and Moore first rehash the same argument regarding duplicity in the indictment and verdict sheet, except without the ineffective assistance of counsel claim.  We reject this argument for the same reasons we discussed at length above.[189]

### 2. The indictment did not fail to charge offenses in counts three and five.

Messrs. Wilson and Moore argue counts three and five of the indictment did not charge an offense because they failed to recite the elements of 18 U.S.C. § 924(c) and did not charge Messrs.

24

Wilson or Moore with brandishing a firearm.[190]  The United States responds the indictment tracked the language of the statute.[191]  We agree with the United States.

An indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged."[192]  Congress prohibits "us[ing] or carr[ying] a firearm" in relation to any "crime of violence"; "or" possessing a firearm in relation to any crime of violence.[193]  It further prohibits "brandish[ing]" a firearm in connection with a crime of violence.[194]  Here, counts three and five of the indictment charged defendants with "knowingly us[ing] and carr[ying], and aid[ing] and abet[ing] the use and carrying of, a firearm . . . during and in relation to a crime of violence . . . that is, conspiracy to commit armed bank robbery and armed bank robbery, as charged in [c]ounts [o]ne and [t]wo of this indictment, during which the firearm was brandished."[195]

Messrs. Wilson and Moore are simply incorrect our grand jury failed to charge "brandishing."  They are also incorrect the indictment must charge use, carrying, **and** possession of a firearm; "possession" is simply the statute's definition of "use" or "carry," as Judge Davis explained to the jury.[196]  We reject this argument.

### 3.    We reject Messrs. Wilson and Moore's claim of actual innocence.

Messrs. Wilson and Moore argue—although it appears Mr. Wilson makes this argument only his own behalf—they are actually innocent of counts three and five because trial evidence showed only Mr. Moore brandished the firearm.[197]  The United States argues this claim is a procedurally defaulted insufficiency of the evidence claim because Messrs. Wilson and Moore do not present new evidence as actual innocence requires.[198]  The United States further argues the claim fails because Mr. Wilson is guilty of brandishing as an accomplice or conspirator.  We agree with the United States.

Actual innocence claims may excuse procedural default.[199]  "[A]ctual innocence refers to factual innocence, not legal insufficiency."[200]  Petitioners claiming actual innocence must show: (1) "new, reliable evidence that was not presented at trial," and (2) "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."[201]  Petitioners cannot claim actual innocence by simply "rest[ing] on the trial record."[202]

Messrs. Wilson and Moore simply cite to the trial record to argue because only one gun was used, Mr. Wilson cannot be guilty of acting using or carrying a firearm.  They present no "new, reliable evidence."  This is an insufficiency of the evidence claim which Messrs. Wilson and Moore failed to earlier raise, procedurally defaulting it.[203]

The claim also fails on its merits because Messrs. Wilson and Moore disregard the jury could have convicted them as principals, accomplices, or conspirators.  Our Court of Appeals recognizes defendants may be convicted under section 924(c)(1) through either accomplice liability or conspiracy liability.[204]  Our jury heard ample evidence Messrs. Wilson and Moore plotted and committed the robberies together.  Mr. Wilson's acts aided and abetted Mr. Moore's using, carrying, and brandishing of the firearm.  Judge Davis amply explained both the accomplice and conspiracy theories of liability, permitting the jury to find both Messrs. Wilson and Moore guilty of using, carrying, and brandishing a firearm even though only one of them acted as the principal.  Messrs. Wilson and Moore's actual innocence claim fails.

### 4.    We reject Messrs. Wilson and Moore's claim Judge Davis's jury instructions "constructively amended" the indictment.

Messrs. Wilson and Moore argue Judge Davis constructively amended the indictment by instructing the jury the United States had to prove they used "or" carried a firearm instead of used "and" carried a firearm.[205]  They further argue Judge Davis failed to instruct the jury they had to "inten[d]" to aid and abet brandishing.[206]  The United States counters the jury instructions may use

disjunctive terms where the indictment uses conjunctive terms and Judge Davis properly instructed the jury.[207]  We agree with the United States.

"A constructive amendment occurs where a defendant is deprived of his substantial right to be tried only on charges presented in an indictment returned by a grand jury."[208]  "[I]t is settled law that where a statute denounces an offense disjunctively, the offense may be charged conjunctively in the indictment."[209]  Such is true here.  Section 924(c) prohibits using "or" carrying a firearm; the indictment charged using "and" carrying a firearm.  Judge Davis's jury instructions properly used the disjunctive phrase "using or carrying" a firearm.[210]  Messrs. Wilson and Moore also argue Judge Davis instructed the jury regarding brandishing even though the indictment did not charge them with brandishing.   They are incorrect; the indictment charges them with brandishing.[211]  They are also incorrect Judge Davis failed to instruct the jury regarding "intent."[212]  We reject this argument.

> **5.    We reject Messrs. Wilson and Moore's argument insufficient evidence existed to convict them of armed bank robbery.**

Messrs. Wilson and Moore next argue the United States failed to adduce evidence of armed bank robbery because armed bank robbery requires the use of a dangerous element or device, and Mr. Wilson never possessed a dangerous element of device.[213]  The United States responds we already rejected this argument and Mr. Wilson failed to appeal it.[214]  We agree with the United States and find the claim meritless.

Congress prohibits bank robbery through section 2113(a), which provides: "Whoever, by force and violence . . . obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to . . . any bank . . . [s]hall be . . . imprisoned not more than twenty years."[215]  Congress prohibits armed bank robbery through section 2113(d), under which Messrs. Wilson and Moore received convictions: "Whoever, in committing, or in attempting to commit,

any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both."[216]

We already found the United States adduced sufficient evidence of bank robbery.[217]  Mr. Wilson claims he cannot be guilty of bank robbery as a principal because he did not himself use the "dangerous weapon or device."[218]  But the United States also charged Messrs. Wilson and Moore as accomplices.[219]  Judge Davis instructed the jury on accomplice liability.[220]  Judge Davis noted the aiding and abetting theory related to the "weapons offense," but said "it's your judgment about what, if anything, it relates to."[221]  The jury permissibly found Mr. Wilson guilty of armed bank robbery despite Mr. Wilson not personally using a firearm.  We reject Messrs. Wilson and Moore's argument regarding insufficient evidence.

> **6.     We reject Messrs. Wilson and Moore's argument their sentences are illegal.**

Messrs. Wilson and Moore argue their sentences are illegal because they received sentences under section 924(c)(1)(A)(ii) for counts three and five for brandishing a firearm, but Judge Davis failed to instruct the jury they needed to "intend" to brandish the firearm.[222]  They are incorrect.  Judge Davis read the Act's definition of "brandish" to the jury.[223]  The jury found Messrs. Wilson and Moore guilty of brandishing a firearm either as principals, accomplices, or conspirators.  Messrs. Wilson and Moore's sentences are valid.

> **7.     We reject Messrs. Wilson and Moore's argument we lacked jurisdiction.**

Messrs. Wilson and Moore argue FDIC insurance does not confer jurisdiction upon us because the FDIC does not insure against losses from robbery.[224]  The United States disagrees, citing cases finding FDIC insurance grants jurisdiction.[225]  We agree with the United States.

A bank's FDIC insurance gives us jurisdiction.[226] As our Court of Appeals held in denying Messrs. Wilson and Moore's appeal, FDIC insurance is our "jurisdictional hook," and counsel's stipulation to evidence of FDIC insurance "satisfied the jurisdictional element of federal bank robbery."[227]  Our Court of Appeals has also held "[b]ank robbery is an economic activity that . . . substantially affects interstate commerce and, thus, is an activity that Congress was well within its rights to criminalize pursuant to its power under the Commerce Clause."[228]  We reject Messrs. Wilson and Moore's jurisdictional argument.

### 8.    We reject Messrs. Wilson and Moore's argument we imposed illegally stacked sentences.

Messrs. Wilson and Moore argue we imposed illegal sentences under the First Step Act by illegally "stacking" their sentences under section 924(c).[229]  The United States argues our Court of Appeals already rejected this claim.[230]  We agree with the United States.  Our Court of Appeals rejected Messrs. Wilson and Moore's claim the First Step Act applies to their sentences.   It reasoned: "[A] defendant whom a district court had sentenced before the First Step Act was enacted could not retroactively claim the benefit of" the First Step Act, citing its decision *United States v. Hodge*.[231]  Our Court of Appeals has not modified its decision in *Hodge*.  We deny Messrs. Wilson and Moore's argument the First Step Act applies to their sentences.

### C.    We find no need to hold an evidentiary hearing.

We must order an evidentiary hearing to decide habeas petitions "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[232]  We abuse our discretion by deciding a section 2255 petition without holding a hearing if "disputes of material fact" exist.[233]

We decline to order an evidentiary hearing.   Messrs. Wilson and Moore's petitions conclusively show they are not entitled to relief because we need not resolve factual disputes or

consider evidence to decide their claims. Their counsel performed reasonably; even had they not, Messrs. Wilson and Moore fail to show resulting prejudice as a matter of law on their ineffective assistance of counsel claims. Their remaining claims are procedurally defaulted and meritless as a matter of law. The record "on its face" precludes habeas relief. We decline to hold an evidentiary hearing. [234]

### D. We decline to issue a certificate of appealability.

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255."[235] We may issue a certificate of appealability if "the applicant has made a substantial showing of the denial of a constitutional right."[236] A petitioner "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[237]

We decline to issue a certificate of appealability. Reasonable jurists could not disagree with our resolution of Messrs. Wilson and Moore's constitutional claims. The issues Messrs. Wilson and Moore raise are inadequate to proceed further because our Court of Appeals already offered conclusive guidance.

## III. Conclusion

Messrs. Wilson and Moore seek habeas relief claiming a dozen constitutional errors arising from their prosecution for conspiracy, armed bank robbery, and using, carrying, and brandishing a firearm. Their four claims of ineffective assistance of counsel fail. Their remaining claims are procedurally defaulted and meritless. We decline to issue a certificate of appealability.

---

[1] ECF Doc. No. 27.  We previously granted the United States' Motion to identify Ms. Kane and Mr. Foster by their initials, recognizing an "ongoing risk" to them because they cooperated with the United States.  *See* ECF Doc. No. 281 at 1 n.1.  We found the risk existed because "Defendants show every intent to proceed in the pending post-trial motions, possible appeals and potential collateral petitions."  *Id.*  Our Court of Appeals has since identified Ms. Kane and Mr. Foster and noted their cooperation with the United States in a published opinion.  *See United States v. Wilson*, 960 F.3d 136, 142 (3d Cir. 2020).  The United States no longer asks us to use initials for Ms. Kane and Mr. Foster, identifying their full names in its brief.  We will identify Ms. Kane and Mr. Foster by their full names.

[2] *See* ECF Doc. No. 294 at 2–4.

[3] *Id.* at 2–3.

[4] *See, e.g.*, Notes of Testimony (N.T.) Sept. 28, 2016 Trial at 32:19–20; 38:1–4; N.T. Sept. 29, 2016 Trial at 31:8–18; 34:22–24 (Mr. Moore was to hold the gun); 37:21–24 (same).

[5] ECF Doc. No. 294 at 2.

[6] *Id.* at 3; N.T. Sept. 28, 2016 Trial at 44:19–23 (Mr. Moore entered the bank with a gun "in his hand"); 48:10–15 (identifying Mr. Moore as carrying the gun).

[7] ECF Doc. No. 294 at 2–3.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *See, e.g.*, N.T. Sept. 26, 2016 Trial at 58–63 (repeatedly referencing "a" gun or "the" gun regarding the Bala Cynwyd robbery); N.T. Sept. 27, 2017 Trial at 45:21–23 (Q: "[D]id you see anything on [the robbers'] hands?" A: "Yes. There was *a* semi-automatic pistol." (emphasis added)); *id.* at 46:10–13 (Q: "I want to talk to you briefly about *the gun* that you saw.  Could you describe *the gun* for the members of the jury?" A: "*It* was a semiautomatic pistol . . ." (emphases added).

[13] *See, e.g.*, N.T. Sept. 29, 2016 Trial at 44:4.

[14] ECF Doc. No. 294 at 3.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] N.T. Sept. 28, 2016 Trial at 83:4–5; N.T. Sept. 29, 2016 Trial at 63:23–24; N.T. Sept. 27, 2017 Trial at 70:6–7 ("I saw some individuals coming into the store. They had masks and ***a gun***." (emphasis added)); *id.* at 71:3–8 (Q: "And could you describe ***the gun*** that you observed?" A: "***It*** was ***a*** black gun, and I'm not sure what type of ***a gun*** it was." (emphases added)).

[19] ECF Doc. No. 294 at 3.

[20] N.T. Sept. 29, 2016 Trial at 63:20.

[21] N.T. Sept. 27, 2016 Trial at 64:11–65:11.

[22] *Id.*

[23] N.T. Sept. 27, 2016 Trial at 62:23–25; 64:11–21; 65:1–11.

[24] N.T. Sept. 30, 2016 Trial at 51:18–19.

[25] *Id.* at 51:19–23.

[26] *Id.* at 50:6–9.

[27] *Id.* at 50:10–12.

[28] *Id.* at 46:24–47:15.

[29] *Id.* at 38:6–46:23 (explaining principal liability by detailing elements of offenses); 31:17–38:5 (conspiracy liability); 47:13–48:15 (accomplice liability).

[30] *Id.* at 37:2–6 (coconspirators are "responsible for the acts of the other partners that were committed in furtherance of the conspiracy"); *Id.* at 47:12–15 ("A person can be criminally . . . responsible . . . for the conduct of another if he or she is an accomplice.").

[31] *Id.* at 47:10–12.

[32] *Id.* at 48:13–15.

[33] *Id.* at 42:23–24; 43:9–21.

[34] *Id.* at 42:24–43:1.

[35] *Id.* at 43:2–7.

---

[36] *Id.* at 54:8–12.

[37] *Id.* at 52:25–53:3.

[38] *Id.* at 53:7–10.

[39] *Id.* at 53:11–15.

[40] ECF Doc. No. 190 at 2–3 ("Do you unanimously find that the government proved beyond a reasonable doubt that MARQUIS WILSON (or his conspirator or accomplice) brandished the firearm when committing this offense?"); *id.* at 5–6 ("Do you unanimously find that the government proved beyond a reasonable doubt that MALCOLM MOORE (or his conspirator or accomplice) brandished the firearm when committing this offense?").

[41] *See id.* at 1–6.

[42] N.T. Sept. 30, 2016 Trial at 52:17–18 ("Whereupon, other matters were had but not transcribed herein."); 52:25–53:15 ("And so we've been discussing the verdict slip, the lawyers and I," and detailing "changes" regarding the interrogatory).

[43] *Id.* at 53:18–23.

[44] *See* ECF Doc. No. 190 at 1–6.  The Clerk of Court reassigned this case to us after Judge Davis's retirement.  *See* ECF Doc. No. 256.

[45] ECF Doc. No. 190 at 2–3; 5–6.

[46] ECF Doc. No. 234 (Mr. Moore's Motion for acquittal or new trial); ECF Doc. No. 237 (Mr. Wilson's Motion for acquittal or new trial); ECF Doc. No. 255 (Mr. Moore's Motion for acquittal or a new trial through new counsel).

[47] ECF Doc. No. 237.

[48] ECF Doc. No. 234.

[49] ECF Doc. No. 255 at 1–8.

[50] ECF Doc. No. 270–71.

[51] *See* ECF Doc. No. 354. Judge Davis retired and the Chief Judge reassigned this case to us beginning with the post-trial motions.

[52] *See Wilson*, 960 F.3d at 142.

[53] ECF Doc. No. 354 at 6–29.

[54] *Id.* at 18:13–20:17.

[55] ECF Doc. No. 255 at 6.

[56] ECF Doc. No. 354 at 24:14–18.

[57] *Id.* at 24:25–25:7.

[58] *Id.* at 26:19–22.

[59] *Id.* at 4–6.

[60] ECF Doc. No. 294 at 14–18.

[61] ECF Doc. No. 310 at 2–3.

[62] *Id.* at 2.

[63] *See id.*; *see also* Wilson Pre-Sentencing Report (PSR) ¶¶ 117–18.

[64] *See* Wilson PSR ¶ 117; *see also* 18 U.S.C. § 924(c)(1)(A)(ii).

[65] ECF Doc. No. 341 at 23:25–24:1.

[66] *Id.* at 28:13.

[67] *Id.* at 29:5–6.

[68] *See* Wilson PSR ¶ 119; *see also* 18 U.S.C. § 924(c)(1)(C)(i).

[69] ECF Doc. No. 338 at 2–3.

[70] *Id.* at 2.

[71] Malcolm Moore PSR ¶¶ 109–10.

[72] ECF Doc. No. 338 at 2; ECF Doc. No. 343 at 34:3–35:3.

[73] ECF Doc. No. 326.

[74] Appellant's Opening Brief and Appendix at 2–3, *Wilson*, No. 18-1079 (3d Cir. Jan. 7, 2019).

[75] *See* Order, *Wilson*, No. 18-1079 (3d Cir. July 1, 2019).

[76] *Wilson*, 960 F.3d 136.

---

[77] ECF Doc. Nos. 395, 397. Mr. Wilson filed duplicative petitions on both his and Mr. Moore's behalf. The United States responded to both petitions. Mr. Wilson replied. Mr. Moore—on his own behalf only—filed an "amended" 2255 petition after we granted him leave. The United States responded to Mr. Moore's amended petition. Mr. Moore replied.

[78] ECF Doc. No. 395 at 6–9; ECF Doc. No. 413.

[79] ECF Doc. No. 395 at 9–16.

[80] 28 U.S.C. § 2255(a).

[81] ECF Doc. No. 395 at 6–9; ECF Doc. No. 413.

[82] ECF Doc. No. 399 at 12–22; ECF Doc. No. 414.

[83] *United States v. Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997) (internal quotations omitted).

[84] *Bell v. Cone*, 535 U.S. 685, 702 (2002) (internal quotations omitted).

[85] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

[86] *Id.*

[87] ECF Doc. No. 395 at 6–7.

[88] ECF Doc. No. 399 at 13–15.

[89] *United States v. Moyer*, 674 F.3d 192, 204 (3d Cir. 2012).

[90] *Id.* at 205.

[91] *United States v. Bonner*, No. 09-72, 2014 WL 5795601, at *6 (M.D. Pa. Nov. 6, 2014).

[92] *Id.* at 5.

[93] *United States v. Berardi*, 675 F.2d 894, 897 (7th Cir. 1982).

[94] *Id.* at 898.

[95] *Moyer*, 674 F.3d at 205 (quoting *United States v. Root*, 585 F.3d 145, 154 (3d Cir. 2009)).

[96] *United States v. Ferguson*, 676 F.3d 260, 279 (2d Cir. 2011).

[97] 18 U.S.C. § 2(a).

[98] *Rosemond v. United States*, 572 U.S. 65, 71 (2014).

[99] *United States v. Whitted*, 734 F. App'x 90, 93 (3d Cir. 2018) (citing *Rosemond*, 572 U.S. at 79–80).

[100] *United States v. Klein*, 515 F.2d 751, 753 (3d Cir. 1975).

[101] *Whitted*, 734 F. App'x at 93 (citing *United States v. Ramos*, 147 F.3d 281, 286 (3d Cir. 1998)).

[102] *See, e.g.*, *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) ("[A]iding and abetting is a different means of committing a single crime, not a separate offense itself, for otherwise it could not be implicit in a substantive charge."); *United States v. Thompson*, No. 19-01610, 2021 WL 2531079, at *2 (D.N.M. June 21, 2021) ("Charging [defendant] with both personal and conspiratorial liability in Count 3 is [acceptable], because just as with aiding and abetting liability, *Pinkerton* co-conspirator liability is a theory of guilt, not a separate offense."); *United States v. Wright*, No. 17-142, 2018 WL 3814297, at *5 (D. Nev. Aug. 10, 2018) (aiding and liability is "a theory of liability" and "embedded in every federal indictment for [the] substantive crime," "whether or not it is specifically mentioned" (internal quotations omitted)); *United States v. Parsons*, No. 13-104, 2015 WL 898259, at *2 (E.D. Pa. Feb. 27, 2015) (quoting *Garcia*, 400 F.3d at 820).

[103] *Garcia*, 400 F.3d at 820.

[104] *See, e.g.*, *United States v. Starks*, 515 F.2d 112, 117 (3d Cir. 1975); *Bonner*, 2014 WL 5795601, at *5.

[105] *Starks*, 515 F.2d at 116.

[106] Messrs. Wilson and Moore also argue the indictment and verdict sheet are duplicitous because they included using ***and*** carrying a firearm in the same count, not using ***or*** carrying a firearm as Congress prohibits through the Act.  ECF Doc. No. 412 at 5–6; *see* 18 U.S.C. § 924(c)(1)(A).  We disagree. As we discuss below, "it is settled law that where a statute denounces an offense disjunctively, the offense may be charged conjunctively in the indictment." *United States v. Niederberger*, 580 F.2d 63, 68 (3d Cir. 1978); *see infra* Part II.B.4.

[107] *Bonner*, 2014 WL 5795601, at *5.

[108] *Id.*

[109] *Id.*

[110] *Id.* at *6.

[111] *Id.* at *8.

[112] *United States v. Brown*, No. 15-543-D, 2016 WL 6093308 (N.D. Tex. Oct. 18, 2016).

[113] *Id.* at *1.

---

[114] *Id.* at *3.

[115] *Id.*

[116] *Moyer*, 674 F.3d at 205.

[117] *Ferguson*, 676 F.3d at 279 (finding a "general unanimity instruction" sufficient to ensure "the jurors unanimously agreed on the theory for conviction" because "a jury is unanimous even if some jurors convicted on a theory of principal liability and others on aiding and abetting").

[118] *See, e.g.*, *Coleman v. United States*, No. 310-238, 2018 WL 5315216, at *11 (W.D.N.C. Oct. 26, 2018) (jury instruction reading "In order to convict the defendant of the crime charged, your verdict must be unanimous that at least one avenue of proof was established beyond a reasonable doubt" sufficient to cure prejudice); *United States v. Gray*, No. 11-13, 2012 WL 1554649, at *2 (W.D. Pa. May 1, 2012) ("Any concerns that a verdict might not be unanimous as to particular elements of the crime could be allayed with proper jury instructions."); *United States v. Salerno*, No. 10-301, 2011 WL 6141017, at *3 (M.D. Pa. Dec. 9, 2011) ("Any concerns [defendant] has about the concealment of a not guilty verdict or the unanimity of jurors can be cured by appropriate jury instructions and special interrogatories.").

[119] *Moyer*, 674 F.3d at 205.

[120] *Id.*

[121] 18 U.S.C. § 924(c)(1)(A).

[122] 18 U.S.C. § 924(c)(1)(A)(i).

[123] 18 U.S.C. § 924(c)(1)(A)(ii).

[124] *Moyer*, 674 F.3d at 205.

[125] *United States v. Baird*, 63 F.3d 1213, 1215 (3d Cir. 1995).

[126] *Martinez v. Illinois*, 572 U.S. 833, 839 (2014) (internal quotations omitted).

[127] *Id.* at 841.

[128] *See, e.g.*, *United States v. Broce*, 488 U.S. 563, 569 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.").

[129] *See, e.g.*, *Saylor v. Cornelius*, 845 F.2d 1401, 1402–03 (6th Cir. 1988).

[130] Even if we found duplicity and prejudice, we still would not necessarily find ineffective assistance of counsel without first ordering a hearing because it is unclear whether their trial

counsel objected to the verdict sheet.  Judge Davis held an off-the-record discussion with counsel before tendering the verdict sheet to the jury.  N.T. Sept. 30, 2016 Trial at 52:17–53:3.  It appears the discussion persuaded Judge Davis to change the verdict sheet to add the "brandishing" interrogatories.  *Id.* at 53:4–10 ("And those changes that [counsel and I] have agreed upon require that I tell you a couple of additional things, because on the weapons offenses . . . you will be asked to answer a question called a jury interrogatory.").  It is unclear whether Messrs. Wilson and Moore's counsel proposed or objected to the special interrogatory.  It is also unclear whether they proposed separate special interrogatories for each theory of liability.  But we need not decide these issues as we find counsel performed reasonably.

[131] ECF Doc. No. 395 at 7–9.

[132] ECF Doc. No. 399 at 15–17.

[133] ECF Doc. No. 412 at 7–16.

[134] *Id.* at 12–13.

[135] *See* ECF Doc. No. 27 at 8, 10.

[136] 18 U.S.C. § 2113(f).

[137] *United States v. Wilson*, No. 14-209-1, 2017 WL 6328154, at *8 (E.D. Pa. Dec. 11, 2017) (citing *United States v. Spinello*, 265 F.3d 150, 155 (3d Cir. 2001)), *aff'd*, 960 F.3d 136 (3d Cir. 2020).

[138] ECF Doc. No. 294 at 14–18.

[139] *Id.* at 17.

[140] *Id.*

[141] *Id.* at 18.

[142] *Id.*

[143] *Wilson*, 960 F.3d at 142–44.

[144] *Id.* at 144.

[145] *Id.*

[146] *United States v. Alford*, No. 00-065, 2008 WL 299060, at *8 (S.D. Ohio Feb. 1, 2008).

[147] *See United States v. Smith*, No. 06-0053, 2010 WL 2400376, at *2 (N.D. Ind. June 11, 2010) ("[I]t is clear that the stipulation was a matter of sound trial strategy; namely, the defense agreed

to stipulate to facts which could have been easily proven by the Government and focus instead on the disputed elements of the case.").

[148] *See, e.g.*, *United States v. Paneque*, 60 F. App'x 339, 342 (2d Cir. 2002) ("There was no error in stipulating to the FDIC insurance, in the light of the ample evidence available to establish its existence."); *Smith*, 2010 WL 2400376, at \*2; *Alford*, No. 03-065, 2008 WL 299060, at \*8 (S.D. Ohio Feb. 1, 2008) ("It was not ineffective assistance of counsel . . . to stipulate to the FDIC insurance here because this element is easily proved by the United States by introduction of the certificate of insurance and juries are notably uninterested in hearing proof of matters which are not and cannot be seriously contested."); *United States v. Green*, 21 F. Supp. 2d 521, 525 (D. Md. 1998) ("Counsel's decision to enter into the stipulation was a matter of tactics, and not objectively unreasonable."), *aff'd*, 181 F.3d 92 (4th Cir. 1999).

[149] *See, e.g.*, *United States v. Sandles*, 469 F.3d 508, 517 (6th Cir. 2006)

[150] *United States v. Davis*, 735 F.3d 194, 199 (5th Cir. 2013).

[151] *United States v. Coleman*, 300 F. App'x 164, 166 (3d Cir. 2008); *see also United States v. Dupree*, 472 F. App'x 108, 111 (3d Cir. 2012) (testimony of branch manager established FDIC insurance at time of robbery); *United States v. Harper*, 314 F. App'x 478, 482 (3d Cir. 2008) (bank officials' testimony showed FDIC insurance).

[152] *See, e.g.*, *United States v. Osuagwu*, No. 18-11108, 2021 WL 3854801, at \*3 (5th Cir. Aug. 27, 2021) (testimony of bank employees and certificate establishes FDIC-insured status); *O'Reilly v. United States*, No. 05-80025, 2016 WL 337458, at \*4 (E.D. Mich. Jan. 28, 2016) (testimony of a branch manager and a certificate sufficient to show FDIC insurance); *Alford*, 2008 WL 299060, at \*8 (certificate of insurance proves FDIC insurance).

[153] *Smith*, 2010 WL 2400376, at \*2.

[154] *Wilson*, 960 F.3d at 144.

[155] ECF Doc. No. 412 at 45–46.

[156] *Berrios v. United States*, No. 12-2471, 2015 WL 8490962, at \*7 (D.N.J. Dec. 9, 2015) (finding no prejudice based on stipulation to FDIC insurance); *see also Paschal v. United States*, No. 02-8745, 2003 WL 22462555, at \*4 (N.D. Ill. Oct. 30, 2003) ("A trial counsel's stipulation to the authenticity of business records has been held to have been harmless when there existed no factual basis to dispute the validity of the business records.").

[157] *Mitchell v. Superintendent Dallas SCI*, 902 F.3d 156, 163 (3d Cir. 2018).

[158] *Davis v. Washington*, 547 U.S. 813, 822 (2006).

[159] *United States v. Martinez-Rios*, 595 F.3d 581, 587 (5th Cir. 2010) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004)).

[160] *See, e.g.*, *Osuagwu*, 2021 WL 3854801, at *2 (5th Cir. Aug. 27, 2021) (statements "of FDIC's counsel in the affidavit that 'after diligent search, no record or entry in the official records of the FDIC has been found to exist which terminated the status' of the banks as insured by the FDIC and that the banks retained their insured statuses through the relevant dates" were "likely testimonial"); *see also Sandles*, 469 F.3d at 515–16 (admission of affidavit from FDIC official violated Confrontation Clause because it "establish[ed] a necessary fact in a criminal case").

[161] *United States v. Bellucci*, 995 F.2d 157, 161 (9th Cir. 1993).

[162] *See, e.g.*, *id.*; *Osuagwu*, 2021 WL 3854801, at *3 ("ample evidence" of FDIC insurance, including proposed testimony of bank employees and a certificate showing FDIC insurance, rendered any Confrontation Clause violation harmless); *United States v. Gipson*, 387 F. App'x 761, 763 (9th Cir. 2010) (Confrontation Clause violation constituted harmless error where "offending statement was cumulative of other circumstantial evidence showing, beyond a reasonable doubt, that the [bank] was federally insured on the day of the robbery . . . [and petitioner] presented no evidence contradicting the government's records and testimony, and he does not contend on appeal that this evidence was improperly admitted"); *United States v. Burwell*, 79 F. Supp. 3d 1, 17 (D.D.C. 2015) ("Nor does the Court find that Burwell was prejudiced by counsels' failure to raise this claim because Burwell has not pointed to any evidence to rebut the claim that the banks were FDIC-insured.").

[163] *Bell*, 535 U.S. at 702.

[164] ECF Doc. No. 395 at 9.

[165] ECF Doc. No. 399 at 19–22.

[166] *United States v. Kennedy*, 682 F.3d 244, 254 (3d Cir. 2012).

[167] *Id.* at 255.

[168] *United States v. Chorin*, 322 F.3d 274, 281 (3d Cir. 2003) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

[169] ECF Doc. No. 27 at 7.

[170] ECF Doc. No. 27 at 8 ¶ 1, 9 ¶ 1 (incorporating overt acts 1 through 12); *id.* at 10 ¶ 1, 11 ¶ 1 (incorporating overt acts 13 through 31).
[171] ECF Doc. No. 27 at 2 ¶ 4.

[172] *See* Fed. R. Crim. P. 7(c) ("The indictment or information must be a plain, concise, and ***definite*** written statement of the essential facts constituting the offense charged." (emphasis added)).

[173] ECF Doc. No. 413 at 1.

[174] ECF Doc. No. 414.

[175] ECF Doc. No. 294 at 23–25.

[176] *Id.* at 24.

[177] *Id.* at 24–25.

[178] *Wilson*, 960 F.3d at 147.

[179] ECF Doc. No. 399 at 22–25.

[180] *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'" (quoting *Murray v. Carrier*, 477 U.S. 478, 485 (U.S. 1986)); *Oelsner v. United States*, 60 F. App'x 412, 414 (3d Cir. 2003) ("Procedural default bars a defendant from raising new claims in his § 2255 motion."). Procedural default rules do not apply to ineffective assistance of counsel claims. *See Massaro*, 538 U.S. at 504.

[181] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (internal quotations omitted), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012).

[182] *Massaro*, 538 U.S. at 504.

[183] Procedural default does not apply to claims of actual innocence. *See United States v. Lynch*, 807 F. Supp. 2d 224, 230 (E.D. Pa. 2011). But as we explain below, Messrs. Wilson and Moore failed to argue actual innocence; they instead challenge the sufficiency of the evidence. *See infra* Part II.B.3.

[184] The issues they raised on appeal are: (1) whether Judge Davis should have granted their motion to suppress evidence collected during an impermissibly long routine traffic stop; (2) whether Judge Davis's admission of cell site location information violated the Fourth Amendment; (3) whether trial counsel's stipulation to the FDIC element violated the Sixth Amendment's right to counsel; (4) whether the convictions under 18 U.S.C. § 924(c) were in error because "the indictment and the jury instructions allowed the jury to convict on an impermissible legal theory, that conspiracy to commit armed bank robbery is a crime of violence"; (5) whether Mr. Wilson's 519-month sentence is substantively unreasonable considering the sentencing factors in 18 U.S.C. § 3553(a)(2). They also argued the First Step Act should apply to their sentences.

[185] *United States v. Derewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993), *cert. denied*, 511 U.S. 1033 (1994).

[186] ECF Doc. No. 412 at 2.

[187] *Id.*

[188] *See Sunal v. Large*, 332 U.S. 174, 182 (1947) (section 2255 allows petitioners to challenge errors affecting constitutional rights or the jurisdiction of the trial court).

[189] *See supra* Part II.A.1.

[190] ECF Doc. No. 395 at 15.

[191] ECF Doc. No. 399 at 25–29.

[192] Fed. R. Crim. P. 7(c)(1).

[193] 18 U.S.C. § 924(c)(1)(A).

[194] 18 U.S.C. § 924(c)(1)(A)(ii).

[195] ECF Doc. No. 27 at 9; *see also id.* at 11.

[196] N.T. Sept. 30, 2016 Trial at 42:23–43:8.

[197] ECF Doc. No. 395 at 15.

[198] ECF Doc. No. 399 at 29–33.

[199] *See Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) (internal quotations omitted).

[200] *Reeves v. Fayette SCI*, 897 F.3d 154, 160 (3d Cir. 2018), *as amended* (July 25, 2018).

[201] *Houck*, 625 F.3d at 93.

[202] *Sweger v. Chesney*, 294 F.3d 506, 523 n.18 (3d Cir. 2002).

[203] While Messrs. Wilson and Moore previously argued insufficient evidence, they only argued insufficient evidence they used a real gun—not insufficient evidence they used only **one** gun, as here.  ECF Doc. No. 294 at 18.  Messrs. Wilson and Moore did not appeal this issue.

[204] *See United States v. Casiano*, 113 F.3d 420, 427 (3d Cir. 1997).

[205] ECF Doc. No. 395 at 15.

[206] *Id.*

[207] ECF Doc. No. 399 at 33–34.

[208] *United States v. Syme*, 276 F.3d 131, 148 (3d Cir. 2002) (internal quotations omitted).

209 *Niederberger*, 580 F.2d at 68.

210 *See, e.g.*, N.T. Sept. 30, 2016 Trial at 42:2–5, 22–23; *see also United States v. Vampire Nation*, 451 F.3d 189, 204 (3d Cir. 2006) (no plain error where jury was charged in disjunctive and statute listed "multiple routes to a conviction in the disjunctive"), *other grounds superseded by statute as recognized in United States v. Lacerda*, 958 F.3d 196, 216 (3d Cir. 2020).

211 ECF Doc. No. 27 at 9, 11.

212 *See, e.g.*, N.T. Sept. 30, 2016 Trial at 54:18–20 ("[U]nder the accomplice liability theory, knowledge and intent is an absolutely essential element.").

213 ECF Doc. No. 395 at 15–16.

214 ECF Doc. No. 399 at 34–35.

215 18 U.S.C. § 2113(a).

216 18 U.S.C. § 2113(d).

217 ECF Doc. No. 294 at 9–14.

218 18 U.S.C. § 2113(d).

219 ECF Doc. No. 27 at 8, 10 (charging violations of 18 U.S.C. 2113(d) and 2).

220 *See* N.T. Sept. 30, 2016 Trial at 54:3–55:7.

221 *Id.* at 47:9–15.

222 ECF Doc. No. 395 at 16. Messrs. Wilson and Moore also argue they were not charged with brandishing in the indictment, so they could not receive sentences for brandishing.  As we discussed, this is incorrect; the indictment did charge brandishing.  *See* ECF Doc. No. 27 at 9, 11.

223 *Compare* N.T. Sept. 30, 2016 at 53:16–23, *with* 18 U.S.C. § 924(c)(4).

224 ECF Doc. No. 395 at 16.

225 ECF Doc. No. 399 at 38–39.

226 *See* 18 U.S.C. § 2113(f).

227 *Wilson*, 960 F.3d at 142.

228 *Spinello*, 265 F.3d at 159.

[229] ECF Doc. No. 395 at 16.

[230] ECF Doc. No. 399 at 39.

[231] *Wilson*, 960 F.3d at 151; *see United States v. Hodge*, 948 F.3d 160, 162–64 (3d Cir. 2020).

[232] 28 U.S.C. § 2255(b); *see United States v. Scripps*, 961 F.3d 626, 634 (3d Cir. 2020) (remanding for an evidentiary hearing where "the record does not conclusively show that [defendant] is not entitled to habeas relief for his ineffective assistance of appellate counsel claim").

[233] *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015).

[234] *United States v. Schwartz*, 925 F. Supp. 2d 663, 694 (E.D. Pa. 2013).

[235] 28 U.S.C. § 2253(c)(1)(B).

[236] 28 U.S.C. § 2255(c)(2).

[237] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).