### THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 14-209-1 |
| | : | |
| MARQUIS WILSON | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                 November 14, 2024

Our jury convicted Marquis Wilson of carrying a firearm while robbing banks. We sentenced him in January 2018 to 519 months imprisonment after considering then-existing mandatory minimum custodial sentences. Congress reduced mandatory minimum sentences applying to Mr. Wilson's conviction eleven months later but specifically prohibited judges from retroactively reducing the sentence for Mr. Wilson's crime. Mr. Wilson appealed, sought habeas relief, and repeatedly moved for compassionate release without success through and after the COVID-19 pandemic. He always argued his January 2018 sentence is unfair citing Congress's changes to mandatory minimum sentencing eleven months after his sentencing. We denied his motions given Congress directed the amended sentencing policy is not retroactive for his crime.

Mr. Wilson moved again for compassionate release earlier this year based on a November 2023 Sentencing Commission Amendment recommending sentencing judges consider a change in law as an extraordinary and compelling reason for compassionate release of a person with a long sentence who has served at least ten years if the judge finds a gross disparity between the imposed sentence and a sentence which would be imposed today. We deferred deciding his most recent compassionate release motion for a couple months as our Court of Appeals reviewed the issue.

Our Court of Appeals two weeks ago confirmed its 2021 holding Congress does not allow sentencing judges to retroactively apply new sentencing mandates to convictions for carrying a

firearm in connection with a crime of violence. Mr. Wilson is still not eligible for compassionate release based upon the change in law. He otherwise cannot show a basis for compassionate release. We deny his Motion for compassionate release on the stated grounds without prejudice.

## I.    Background

Marquis Wilson (then serving a Pennsylvania probation sentence) and three others conspired to rob two Wells Fargo banks.[1] One member of the group worked as a bank teller at a Wells Fargo in Bala Cynwyd, Pennsylvania.[2] The bank teller assisted the others by sending a text message to Mr. Wilson while she was at work on November 4, 2013 letting him know it was a good time to commit the robbery.[3] Mr. Wilson and two male companions entered the bank holding a firearm.[4] Mr. Wilson and one of his companions jumped over the counter and demanded the bank employees give them money while the third man waved his gun around and threatened to shoot employees and customers.[5] The group obtained approximately $81,000.[6] Mr. Wilson and his companions robbed a Wells Fargo branch in Phoenixville in a similar fashion the following week.[7] The group obtained approximately $70,000 and fled the bank.[8]

Our Grand Jury charged Marquis Wilson and his three co-conspirators of robbing two Wells Fargo bank branches.[9] We proceeded to trial. The jury in October 2016 convicted Mr. Wilson of conspiracy to commit armed bank robbery; armed bank robbery; and carrying, using, and aiding and abetting the use and carrying of a firearm in relation to a crime of violence as defined by Congress at 18 U.S.C. section 924(c).[10]

We reviewed Mr. Wilson's criminal history and held a sentencing hearing in January 2018.[11] Mr. Wilson committed the bank robberies while serving a two-year term of probation for a state court conviction for driving a stolen vehicle.[12] He has three juvenile adjudications on his record.[13] At the time of sentencing Congress set the mandatory minimum sentence at 384 months

in custody.[14] We sentenced Mr. Wilson at the top of the Sentencing Guidelines range to 519 months imprisonment and two years of supervised release after considering then-existing mandatory minimums, his significant role in the offense, criminal history, and relevant sentencing factors.[15]

Mr. Wilson has now served approximately 130 months of his sentence. He challenged his conviction and sentencing several times through direct appeal, habeas requests, and petitions for compassionate release.[16]

## II.    Analysis

Mr. Wilson now moves again for compassionate release arguing his January 2018 sentence is unusually long.[17] He also argues his young age at the time of the bank robberies, the conditions in prison, and his rehabilitation efforts warrant compassionate release.[18] We must consider whether Mr. Wilson is ***eligible*** for a sentence reduction before we can determine whether the circumstances ***warrant*** a sentence reduction.[19] Mr. Wilson must establish an extraordinary and compelling reason for release—a "threshold question"—before we can exercise our discretion to determine whether he qualifies for a sentence reduction.[20]

Mr. Wilson does not "clear [the] threshold for eligibility," and our analysis need proceed no further.[21]

### A.  We are guided by the Sentencing Reform Act of 1984 and the First Step Act.

We first must address the context of Mr. Wilson's latest request. Congress in The Sentencing Reform Act of 1984 created the United States Sentencing Commission "to establish sentencing policies and practices for the Federal criminal justice system[.]"[22] "The Commission fulfills its purpose by promulgating sentencing guidelines and policy statements."[23] The Commission is responsible for promulgating general policy statements regarding sentencing modification provisions in the compassionate release statute, which includes defining those

"extraordinary and compelling reasons for sentence reduction[.]"[24] The compassionate release statute allows us to reduce a sentence if "'extraordinary and compelling reasons warrant such a reduction' and the reduction is consistent with both the Commission's policy statements and the sentencing factors set forth in 18 U.S.C. § 3553(a)."[25]

Only the Bureau of Prisons could move for compassionate release on behalf of incarcerated persons before 2018; incarcerated persons could not move themselves.[26] Congress, through the First Step Act of December 2018, opened the door for incarcerated persons to move for compassionate release after asking the Bureau of Prisons.[27] Congress also revised the criminal code at section 924(c) which used to require firearm sentences be "stacked" on top of each other and served consecutively.[28] As of December 2018 the stacking requirement only applies if the convicted person had a previous, final conviction for a firearm offense.[29]

The Sentencing Commission did not update its Policy Statement for three years following the enactment of the First Step Act to specify the circumstances which could support compassionate release motions filed by incarcerated persons.[30] Federal judges decided whether a fact pattern qualified as an extraordinary and compelling reason for compassionate release from 2019 to 2022.[31] Courts of appeals disagreed whether non-retroactive changes in law could be considered extraordinary and compelling reasons for compassionate release.[32]

The Sentencing Commission attempted to address the circuit split by amending the Policy Statement to define "extraordinary and compelling reasons" for compassionate release motions filed by incarcerated individuals.[33] Under the amended Policy Statement, effective November 2023, "a law change cannot [generally] be considered an extraordinary and compelling reason to grant compassionate release[.]"[34] But the Commission recommended judges reviewing petitions for release filed by incarcerated persons who already served at least ten years consider whether a

change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) presents an extraordinary and compelling reason if the change in law would produce a gross disparity between the sentence being served and the sentence likely to be imposed today.[35]

We now "have two levels of discretion under [new amendment] (b)(6): first, whether to consider a change in law when determining a prisoner's eligibility for compassionate release, and second, the usual discretion when deciding if an eligible prisoner should receive a sentence reduction after considering the § 3553(a) factors."[36]

### B. We cannot consider the First Step Act's 2018 amendment to section 924(c) in determining whether Mr. Wilson is eligible for compassionate release.

We sentenced Mr. Wilson in January 2018, approximately eleven months before the passage of the First Step Act. Mr. Wilson did not have an earlier firearm conviction at the time of the robberies. So, if we sentenced him today, we could sentence him to a minimum 303-month sentence—eighteen years less than his imposed sentence. "But Congress specifically chose not to apply the statutory change to people who had already been sentenced under the old version" of section 924(c).[37] The amendment, in other words, is not retroactive.

Yet Mr. Wilson argues the nonretroactive amendment still might constitute an extraordinary and compelling reason for release under the Sentencing Commission's November 2023 amendment to the Policy Statement. He argues his sentence is unusually long because the amendment to section 924(c) causes a gross disparity between the sentence he would receive today and the sentence he actually received: "the then-mandatory double-25 year consecutive sentence [Mr. Wilson] received for his subsequent 942(c) conviction would not be imposed today."[38] The United States opposes releasing arguing the "unusually long sentence" provision of the Commission's subsection b(6) is not effective because it conflicts with controlling statutes and

exceeds the Sentencing Commission's authority.[39] We, along with several colleagues, addressed these issues presented by other incarcerated persons while awaiting guidance.[40]

We now have the benefit of our Court of Appeals's decision two weeks ago in *United States v. Rutherford* holding the Commission's amendment conflicts with Congress's mandate the First Step's changes to section 924(c) are not retroactive.[41] Our Court of Appeals in *Rutherford* began by reviewing its 2021 decision in *United States v. Andrews* finding the duration of a lawfully imposed sentence did not create an extraordinary or compelling circumstance.[42] The "holding in *Andrews* was that the nonretroactive change to § 924(c), whether by itself or in combination with other factors, cannot be considered in the compassionate release eligibility context."[43]

Our Court of Appeals in *Rutherford* held subsection b(6) does not abrogate *Andrews*.[44] "[S]ubsection (b)(6) in the amended Policy Statement, as applied to the First Step Act's modification of § 924(c), conflicts with the will of Congress and . . . cannot be considered in determining a prisoner's eligibility for compassionate release."[45] Our Court of Appeals's directive in *Andrews*—not the amended Policy Statement—controls.[46] "[T]he First Step Act's change to [section] 924(c) cannot be considered in the analysis of whether extraordinary and compelling circumstances make a prisoner eligible for compassionate release."[47]

We are bound by our Court of Appeals's present holding we cannot consider the amendment to section 924(c) in determining whether Mr. Wilson is eligible for compassionate release.[48] Mr. Wilson's arguments about the disparity in his sentence under the Commission's amendment are unavailing.

### C. Mr. Wilson does not establish other extraordinary and compelling reasons making him eligible for compassionate release.

Mr. Wilson also argues his young age at the time of the bank robbery, the prison's conditions, and his rehabilitative efforts are extraordinary and compelling reasons for a reduction

in sentence.[49] We disagree. The controlling Policy Statement does not list age at the time of the offense as an extraordinary and compelling reason. Our colleagues have found young age at the time of the offense is not extraordinary even if it is uncommon.[50] This guidance holds true even where young age is combined with rehabilitative efforts.[51] We again commend Mr. Wilson for his forty plus certificates of completion in rehabilitation programming.[52] These rehabilitative efforts are tempered somewhat by the seven incidents for which Mr. Wilson has been sanctioned since entering custody.[53] We are not aware of sanctionable behavior occurring since 2016. Even so, we cannot find Mr. Wilson's rehabilitation—alone or combined with his young age at the time of the offense—constitutes an extraordinary and compelling circumstance.

Mr. Wilson further argues the conditions of his prison, FCI Allenwood, constitute an extraordinary and compelling circumstance. He states during the COVID-19 pandemic his prison imposed harsh measures.[54] Mr. Wilson spent three years in isolation with no family visits and the prison did not enforce masks or provide hand sanitizer.[55] He did not have access to programming or adequate medical care and the conditions of the prison affected Mr. Wilson's medical condition.[56] Mr. Wilson argues the Facility has been on lockdown from January 11, 2024 through at least July 5, 2024 because of a staff shortage.[57]

We do not find Mr. Wilson's health presents an extraordinary and compelling reason for release. The Sentencing Commission defines extraordinary and compelling circumstances to include certain medical conditions such as a terminal illness or a condition requiring long-term medical care.[58] We acknowledge doctors diagnosed Mr. Wilson with testicular cancer after his incarceration. But we denied compassionate release on December 31, 2020 because Mr. Wilson was in remission and his cancer in its current state did not constitute an extraordinary and compelling reason for release even in light of the global pandemic.[59] Mr. Wilson does not now

argue his health has taken a turn for the worse. Without evidence Mr. Wilson's cancer has returned, we cannot find COVID-19 presents an extraordinary and compelling reason for releasing him in November 2024 when it did not in 2020.[60]

Mr. Wilson also still does not establish an extraordinary and compelling reason for release by arguing the pandemic and staff shortage resulted in harsh lockdown measures. "[T]his Court has repeatedly held that absent a showing of unique harm to the defendant, prison conditions during the pandemic alone simply do not present grounds for compassionate release."[61] Even if the current (as of July 2024) staff shortage is not related to COVID-19, "generic hardships, common to federal prisoners, cannot be regarded as extraordinary, and have not furnished grounds for compassionate release."[62]

### III. Conclusion

Mr. Wilson does not present an extraordinary and compelling reason for his release. Absent this threshold finding we do not need to analyze whether early release would be consistent with Congress's section 3553(a) factors. We deny Mr. Wilson's Motion for compassionate release without prejudice.

---

[1] *See United States v. Wilson*, 960 F.3d 136, 141 (3d Cir. 2020).

[2] *See id.*

[3] *Id.*; *see also* December 17, 2017 Presentence Investigation Report (hereinafter "PSR") ¶ 11.

[4] *Wilson*, 960 F.3d at 141.

[5] PSR ¶ 13.

[6] *Wilson*, 960 F.3d at 141.

[7] *Id.* at 142.

[8] *Id.*

[9] ECF 190.

[10] *Id.*

[11] *See* ECF 341.

[12] PSR ¶¶ 70, 72.

[13] *Id.* ¶¶ 65–67.

[14] ECF 341 at 30.

[15] *Id.* at 31. We sentenced Mr. Wilson to sixty months of imprisonment as to the conspiracy to commit armed bank robbery and the two armed bank robbery counts. *See* ECF 310. We sentenced Mr. Wilson to 159 months of imprisonment as to the first (of two) counts charging carrying, using, and brandishing a firearm during and in relation to a crime of violence. *Id.* We sentenced Mr. Wilson to 300 months imprisonment as to the second count charging carrying, using, and brandishing a firearm during and in relation to a crime of violence. *Id.* We imposed Mr. Wilson's 300-month sentence to run consecutively with his 159-month sentence as then required by Congress. *Id.*

[16] Mr. Wilson appealed his sentence in January 2018 arguing the First Step Act's amendment to the stacking language in section 924(c) should apply retroactively to lower his mandatory minimum sentence. *Wilson*, 960 F.3d at 151–52. Our Court of Appeals affirmed our sentence reminding Mr. Wilson the stacking amendments do not apply retroactively. *Id.* at 151.

Mr. Wilson moved for compassionate release for the first time in April 2020 arguing his recent cancer diagnosis and subsequent treatment, coupled with then-beginning COVID-19 pandemic, constituted extraordinary and compelling reasons warranting compassionate release. ECF 361. We denied Mr. Wilson relief because he did not exhaust his request and required him to submit supporting medical information confirming his at-risk status to contracting COVID-19. ECF 363.

Mr. Wilson moved for compassionate release a second time in October 2020 and tried to supplement his first compassionate release motion by explaining the lockdown at his prison. ECF 367. We denied him relief finding he again did not exhaust his request. ECF 368.

Mr. Wilson moved for compassionate release a third time later in October 2020 arguing his cancer treatment, coupled with the threat of COVID-19 and Congress's changing section 924(c) mandatory minimum sentences required we grant him compassionate release. ECF 371. We denied him relief finding his cancer diagnosis and treatment were not extraordinary and compelling reasons warranting his release because his cancer was in remission and his medical records showed

no complications from his cancer. ECF 386. We also found Mr. Wilson's stacked section 924(c) did not on its own constitute an extraordinary and compelling reason warranting compassionate release. *See id.*

Mr. Wilson petitioned for habeas relief in May 2021 arguing ineffective assistance of counsel and again challenging his section 942(c) "stacked" mandatory minimum sentences. ECF 395. We denied Mr. Wilson relief on his habeas claims. ECF 416.

Mr. Wilson moved for compassionate release a fourth time in March 2023 arguing his section 924(c) convictions, though not extraordinary and compelling reasons on their own, did constitute extraordinary and compelling reasons when considered in combination with his past cancer treatment and double jeopardy challenge to his section 924(c) sentences. ECF 457. We again denied him compassionate release. ECF 461.

[17] ECF 505 at 7–11 (using the pagination assigned by the CM/ECF docketing system).

[18] *Id.* at 12–17.

[19] *United States v. Rutherford*, No. 23-1904, 2024 WL 4645583, at *2 (3d Cir. Nov. 1, 2024).

[20] *Id.* (quoting *United States v. Stewart*, 86 F.4th 532, 535 (3d Cir. 2023)).

[21] *Stewart*, 86 F.4th at 534.

[22] 28 U.S.C. § 991(b)(1).

[23] *Rutherford*, 2024 WL 4645583, at *2 (citing § 994(a)).

[24] 28 U.S.C. § 994(t).

[25] *Rutherford*, 2024 WL 4645583, at *2. The Commission in 2007 amended a Policy Statement, section 1B1.13, to provide examples of "extraordinary or compelling reasons[.]" *Id.* at *3.

[26] *Id.* at *3.

[27] *Id.*

[28] *See* First Step Act of 2018, Pub. L. 115-391, § 403(a), 132 Stat. 5194, 5221–22 (2018).

[29] *Id.*

[30] *Rutherford*, 2024 WL 4645583, at *3.

[31] *Id.*

[32] *Id.* at *4.

---

[33] U.S.S.G. § 1B1.13.

[34] *Rutherford*, 2024 WL 4645583, at *4 (citing § 1B1.13(c)).

[35] The Commission in section 1B1.13(b)(6) provided:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after consideration of the defendant's individualized circumstances.

[36] *Rutherford*, 2024 WL 4645583, at *4.

[37] *United States v. Andrews*, 12 F.4th 255, 257 (3d Cir. 2021).

[38] ECF 505 at 7–11.

[39] ECF 506 at 8–9.

[40] *See, e.g.*, *United States v. Ali*, No. 07-0042, 2024 WL 3161749, at *9 (E.D. Pa. June 25, 2024); *United States v. Moore*, No. 14-209, 2024 WL 1286935, at *7 (E.D. Pa. Mar. 26, 2024); *United States v. Skeeters*, No. 05-530, 2024 WL 992171, at *6 (E.D. Pa. Mar. 7, 2024).

[41] By contrast, our Court of Appeals had not yet ruled on the issue when we issued our decision in *United States v. Moore* holding Sentencing Commission properly exercised its Congressional authority in adopting section 1B1.13(b)(6). We described the differing reasonable views.

[42] *Rutherford*, 2024 WL 4645583, at *7–*8 (discussing *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021)).

[43] *Id.* at *13.

[44] *Id.* at *10–*15.

[45] *Id.* at *12.

[46] *Id.* at *15.

[47] *Id.*

[48] Notwithstanding the *Rutherford* holding, Mr. Wilson's Motion for compassionate release is premature, as the current statutory minimum for two 924(c) offenses would be fourteen years, and

Mr. Wilson has served just under twelve years. *See, e.g.*, *United States v. Thompas*, No. 17-449-2, 2020 WL 7336933, at *2 (E.D. Pa. Dec. 14, 2020) (denying compassionate release because although Mr. Thompas would receive a lower sentence today following the First Step Act's amendment to section 924(c), he had only served forty-two months of his sentence—"an unacceptable small percentage of his sentence[]"); *United States v. Collazo*, No. 99-304, 2021 WL 632678, at *3 (E.D. Pa. Feb. 18, 2021) (denying compassionate release because Mr. Collazo had served approximately twenty-five years, "less than fifty percent of an estimated sentence[]" under the current law).

[49] ECF 505 at 12–17. Mr. Wilson actually argues his rehabilitative efforts as part of his section 3553(a) discussion. *See* ECF 505 at 19. As noted above, he must establish an extraordinary and compelling reason before we reach the section 3553(a) factors. But mindful of our obligation to construe pro se filings liberally we will include Mr. Wilson's rehabilitation argument as part of our "extraordinary and compelling" discussion.

[50] *See United States v. Jones*, No. 07-143, 2023 WL 2986928, at *5 (D.N.J. Apr. 18, 2023) (finding "age at the time of an offense cannot be an extraordinary and compelling circumstance[]" because it "is not an unanticipated circumstance that the Court was unable to take into account at sentencing[]"); *United States v. Gordon*, 585 F. Supp. 3d 716, 722 (E.D. Pa. 2022), *aff'd*, No. 22-1311, 2022 WL 2582547 (3d Cir. July 8, 2022); *United States v. Andrews*, 480 F. Supp. 3d 669, 687–88 (E.D. Pa. 2020) ("The Court is not aware of any cases where young age at the time of the offense and rehabilitation were found to be both extraordinary and compelling to warrant granting compassionate release without other reasons to support it."), *aff'd*, 12 F.4th 255 (3d Cir. 2021).

[51] *See Andrews*, 480 F. Supp. 3d at 687–88. U.S.S.G. § 1b1.13(d) provides rehabilitation is not by itself an extraordinary and compelling reason, but it may be considered in combination with other circumstances in determining whether a sentence reduction is warranted.

[52] ECF 505 at 21.

[53] PSR ¶ 18.

[54] ECF 505 at 15–16.

[55] *Id.*

[56] *Id.*

[57] *Id.* at 16.

[58] U.S.S.G. § 1B1.13(b)(1).

[59] ECF 386.

[60] The head of the UN World Health Organization declared an end to COVID-19 as a public health emergency on May 5, 2023. *WHO Director-General's opening remarks at the media briefing – 5*

---

*May 2023*, WORLD HEALTH ORGANIZATION (May 5, 2023), https://www.who.int/news-room/speeches/item/who-director-general-s-opening-remarks-at-the-media-briefing---5-may-2023.

[61] *United States v. Arango*, No. 07-542, 2022 WL 16552824, at *2 (E.D. Pa. Oct. 31, 2022) (first citing *United States v. Brunson*, No. 10-379, 2022 WL 3756198, at *5 (E.D. Pa. Aug. 30, 2022); then citing *United States v. Gupton*, No. 20-436, 2022 WL 3448233, at *2 (E.D. Pa. Aug. 16, 2022); and then citing *United States v. Hernandez*, No. 13-200, 2022 WL 910091, *5–*6 (E.D. Pa. Mar. 29, 2022)).

[62] *United States v. Lorenzo*, No. 19-744, 2023 WL 1818370, at *2 (D.N.J. Feb. 7, 2023) (first citing *United States v. Bulaman*, No. 12-794, 2022 WL 3913430, at *4 (D.N.J. Aug. 31, 2022); then citing *United States v. Canzater*, No. 18-578, 2022 WL 1602163, at *10 (D.N.J. May 20, 2022); and then citing *United States v. Burney*, No. 18-606, 2021 WL 4963253, at *8 (D.N.J. Oct. 25, 2021)).